Russell v. State.

---

· CHARLES RUSSELL V. STATE OF NEBRASKA.

FILED DECEMBER 3, 1902.     No. 12,584.

1. Verdict: MERGER OF LESSER OFFENSE IN GREATER: ACQUITTAL OF ONE: CONVICTION OF THE OTHER. Upon the trial of an information charging an offense consisting of · different degrees, the jury may acquit the defendant of the degree charged and convict him of any of the inferior degrees.

2. ——: SPECIFICATION OF OFFENSE. By section 489 of the Criminal Code the jury are required, in trials for murder, to declare in their verdict whether the accused, if they find him guilty, is guilty of murder in the first or second degree, or manslaughter.

3. ——: CAPRICE: REJECTION OF CERTAIN EVIDENCE. The fact that the jury on the trial of an information charging murder in the first degree capriciously, or without sufficient cause, reject the evidence showing deliberation and premeditation, is no reason why their finding of an intentional and malicious killing should be set aside.

4. Non-Expert Witness. A non-expert witness may give his opinion in regard to a matter which men in general are capable of comprehending, when, from the nature of the case, it is impossible for him to lay before the jury all the pertinent facts so as to enable them to see the thing he is describing just as he saw it.

5. Witness: IDENTIFICATION OF PROPERTY. It is not reversible error to permit a witness to testify in regard to the means which he employed to identify property which he had been instructed to seize for the purpose of being used as evidence in a criminal case.

6. Evidence: HYPOTHESIS IMPLYING GUILT: DEFENDANT'S CHARACTER. Any evidence tending to sustain an hypothesis which implies guilt is relevant to the issue in a criminal case and can not be excluded on the ground that it impeaches defendant's general character.

38

7. ———: Unreasonable Search and Seizure. Evidence showing that a pair of old shoes, worn by defendant at the time he was arrested, was taken from the jail in his absence and without his consent, does not establish a violation of his constitutional right to be secure against unreasonable searches and seizures.

8. Argument of Counsel: Mere Articulation: Limit: Rule. There is no rule of law that limits counsel in debate to mere articulation. He may use any appropriate vehicle of thought to carry his conceptions of truth to the jury.

9. Practice: Evidence: Articles and Documents: Jury Room. The modern practice, both in civil and criminal cases, is to send to the jury room all instruments, articles and documents, except depositions, which have been received in evidence, and which will, in the opinion of the trial judge, aid the jury in their deliberations.

10. Jury: Coercion: Food: Light: Drink: Sleep: Ancient Practice: Verdict. The ancient practice of keeping the jury out while deliberating, without food, drink, fire, light or opportunity for sleep, was never in vogue in this state. The rule is that a verdict can not stand which is the result of any species of coercion.

11. ———: Verdict: Physical Endurance: Intellectual Conviction: Discretion. The length of time a jury shall be kept together in consultation is a matter over which the trial court has a large discretionary power, but the verdict must in every case represent intellectual conviction and not mere lack of physical endurance.

12. ———: ———: ———: ———. The fact that a jury has been kept together an unusually long time without reasonable opportunity for sleep, will not vitiate the verdict if it is shown that the agreement was deliberate and voluntary and not due to fatigue or exhaustion.

13. ———: Discussion of Irrelevant Matters. The discussion by the jury of irrelevant matters upon which counsel for defendant based an appeal for acquittal, does not constitute misconduct within the meaning of section 490 of the Criminal Code.

14. Motion for New Trial: Conflicting Evidence. On the hearing of the motion for a new trial in a criminal case the decision of the trial judge upon an issue of fact will be permitted to stand if the evidence upon which it rests is fairly conflicting.

15. Evidence. Evidence examined and found sufficient to sustain the verdict.

Error from the district court for Dawes county. This was the second trial of the case reported 62 Nebr., 512,

being on an indictment in one count for murder in the first degree by shooting. Before WESTOVER, J. *Affirmed.*

*Albert W. Crites* and *Fanning,* for plaintiff in error.

*Frank N. Prout, Attorney General. Norris Brown, Michael J. O'Connell* and *Michael F. Harrington, contra.*

SULLIVAN, C. J.

The information upon which this case was tried charged Charles Russell with having killed Alois F. Staudenmaier unlawfully, purposely, feloniously and of deliberate and premeditated malice. The jury found the accused guilty of murder in the second degree and the court sentenced him to imprisonment in the penitentiary for a term of twenty years.

There are a very unusual number of assignments in the petition in error, but only a few of them have been much discussed by counsel, either orally or in the briefs.

The deceased, a Sioux county ranchman, was found dead on the range about three miles from his own home and about six miles from the home of Russell. No one witnessed the tragedy, but from the wounds upon the body, marks upon the ground and other circumstances, it is certain the killing was intentional and highly probable that it was felonious. Both the slayer and his victim were on horseback. The latter went out, as he usually did, between six and seven o'clock in the morning, to look after his cattle and, according to the theory of the state, the former was lying in wait and shot him. A peculiarly shaped horse-track was found near the body, and was followed close to a point where Russell rode at about eight o'clock on the morning of the day that Staudenmaier was killed. The track of Russell's horse was noted and it was found to be strikingly similar to the other track. The probability that the same horse made both tracks brought Russell under suspicion and led to his arrest and prosecution.

The first and principle ground upon which a reversal of the sentence is claimed, is that the court erred in giving as part of the charge to the jury the law relating to the minor degrees of felonious homicide. Counsel on both sides seem to think that the defendant, if guilty at all, was guilty of murder in the first degree. We do not think this conclusion necessarily results from the evidence. In our view of the case the trial judge acted with commendable prudence in charging as he did. But assuming that the defendant was either guilty of murder in the first degree or wholly innocent, it seems to us entirely clear that there is no error in the instructions of which he may justly complain. By section 487 of the Criminal Code it is provided that: "Upon an indictment for an offense consisting of different degrees the jury may find the defendant not guilty of the degree charged, and guilty of any degree inferior thereto, and upon an indictment for any offense the jury may find the defendant not guilty of the offense but guilty of an attempt to commit the same, where such an attempt is an offense." And by section 489 the jury are required in all trials for murder, if they find the prisoner guilty, to "ascertain in their verdict whether it be murder in the first or second degree, or manslaughter." From these statutory provisions it is quite evident that on the trial of an information charging murder in the first degree the jury may, if the evidence warrants it, find the accused guilty of any of the lower grades of homicide. The fact that the jury rejected capriciously, or without sufficient cause, the evidence showing deliberation and premeditation, is no reason why their finding of an intentional and malicious killing should be set aside. *Baker v. State,* 4 Tex. App., 223; *Parker v. State,* 22 Tex. App., 105; *State v. Hopper,* 71 Mo., 425. This view is consistent with *Vollmer v. State,* 24 Nebr., 838; *Botsch v. State,* 43 Nebr., 501; *Fager v. State,* 49 Nebr., 439; *Strong v. State,* 63 Nebr., 440,—and is not in conflict with any of the cases cited by counsel for defendant. *State v. Mahly,* 68 Mo., 315, was not reversed because the law in relation

to murder in the second degree had been given to the jury, but on account of misconduct of the prosecuting attorney. The ground of the decision is thus stated by Mr. Justice Henry: "The circuit court should have rebuked the prosecuting attorney and told the jury that the law was not as the attorney declared it to be, and for not having done so, the judgment should be reversed." It was remarked in the course of the opinion that the court erred in giving an instruction defining murder in the second degree because there was no evidence to support it, but it was not said, or intimated, that the giving of that instruction was prejudicial to the defendant.

In this case there was evidence upon which there might have been a conviction of murder in the first degree, and if there was error in instructing as to murder in the second degree it was favorable to the defendant and against the state. This is the meaning of the decision in the case of *Kastner v. State*, 58 Nebr., 767.

It is also urged as error that the court permitted witnesses for the state, over objection, to testify in regard to tracks supposed to have been made by the horse which defendant rode on the day of the homicide. While it is earnestly insisted that the rulings upon this class of evidence were prejudicially erroneous, it is admitted that they do not go quite to the extent of violating the rule laid down in the opinion reversing the former conviction. This admission vindicates the action of the court. The decision in the case of *Russell v. State*, 62 Nebr., 512, is based upon a dictum in *Clough v. State*, 7 Nebr., 320, and goes to as great a length in excluding opinion evidence as we are willing to go. It is frequently impossible for a witness to lay before the jury all the pertinent facts so as to enable them to see the thing that he is describing just as he saw it. His conclusion and the facts from which it is drawn can not always be separated. In such cases opinion evidence is competent, because a mere description, without an opinion, would convey a very imperfect and inadequate idea of the thing described. 1 Greenleaf, Evidence, secs. 440,

440*b;* 2 Jones, Evidence, secs. 362, 363; *State v. Reitz,* 83
N. Car., 634; *Commonwealth v. Pope,* 103 Mass., 440; *Commonwealth v. Choate,* 105 Mass., 451; *Commonwealth v. Sturtivant,** 117 Mass., 122. In the case last cited it is
said that "common observers, having special opportunity
for observation, may testify to their opinions as con-
clusions of fact, although they are not experts, if the
subject-matter to which the testimony relates can not be
reproduced or described to the jury precisely as it ap-
peared to the witness at the time, and the facts, upon
which the witness is called to express his opinion, are
such as men in general are capable of comprehending."

In our judgment, all the evidence relating to the tracks
made by defendant's horse and by the horse supposed to
have been ridden by the murderer of Alois F. Stauden-
maier was rightly received. Much of this evidence was,
as counsel suggest, unsatisfactory and inconclusive, but
that was not sufficient to require its exclusion. It was the
business of the jury to estimate its value, and it must be
presumed that their estimate was a just one.

It is claimed that the court erred in permitting the wit-
ness Dickman to testify to instructions given him by the
public prosecutor with respect to the seizure of the horse
which Russell rode on the day Staudenmaier was killed. It
is also insisted that it was error to receive the witness's
account of what he did in identifying the animal. Counsel
have not clearly indicated their objection to this testimony
and it seems to us to be altogether unobjectionable. The
evidence of identification of the horse by his peculiar hoof
and footprint, and the fact that he was found in defend-
ant's pasture, was certainly proper. The instructions of
the county attorney were explanatory of Dickman's con-
duct and in no possible view of the case prejudicial.

It is contended that the court committed serious error
in allowing the state to prove that the accused was in the
habit of carrying firearms, a lariat and a spy-glass. It is
said that the object of this evidence was to show that he

* 19 Am. Rep., 401.

was what is known in frontier parlance as "a bad man."
We do not so understand the record. It was the theory of
the state that the man who committed the murder had a
rope, a revolver and probably a field-glass. The posses-
sion of those things was therefore a relevant fact, a frag-
ment of the material from which it was expected the con-
clusion of guilt would be drawn.

The state offered in evidence as an inculpatory fact a
pair of old shoes belonging to defendant. The offer was
objected to on the ground that the evidence was incompe-
tent, irrelevant and improperly obtained. The objection
was overruled and the ruling is assigned for error. It is
claimed that by the admission of this evidence defendant
was deprived of his constitutional right to be secure
against unreasonable searches and seizures and was vir-
tually compelled to give evidence against himself. This
assignment can not be sustained. It does not appear that
there was any unreasonable search or seizure. The record
merely shows that on the day of the preliminary examina-
tion, while the defendant was at the court house, the shoes
were found in the county jail and removed without his
permission having been first asked or obtained. It does
not even appear that the shoes were in defendant's cell, or
that he had any rightful control or dominion over them at
the time they were taken. The case in this aspect is quite
like *Gindrat v. People*,[*] 138 Ill., 103, 105, and *People v.
Hess*,[†] 85 Mich., 128, in which it was held that incrimina-
ting effects taken without the owner's consent might, in the
trial of a criminal case, be used as evidence against him.

In the closing address to the jury Mr. Harrington, who
was assisting the county attorney, exhibited the revolver
of the accused, together with a bullet found in the body of
the deceased, and used a piece of black crayon to illustrate
his contention that there was a correspondence between a
defect in the muzzle of the weapon and a defect in the bul-
let. The revolver and bullet were in evidence, but the
crayon was not. It seems that counsel was endeavoring to

---

[*] 27 N. E. Rep., 1085.    [†] 48 N. W. Rep., 181.

refute an argument in which Mr. Fanning, one of the attorneys for defendant, had insisted that the two defects were so dissimilar as to prove conclusively that the bullet had not been fired from defendant's revolver. In our opinion, the conduct complained of was entirely proper. The crayon was an argument and a perfectly legitimate one. After being forced into the muzzle of the revolver, it conveyed to the jury an idea, which language, at best but an imperfect vehicle of thought, could not so well convey. There is, we believe, no rule of law which limits counsel in debate to mere articulation. Speech, as a means of convincing the understanding, is justly held in high esteem, but it is not the only means by which counsel's conceptions of truth may be driven home.

The next assignment of error that we shall notice relates to the action of the jury in taking to their consultation room the pair of old shoes that had been introduced in evidence. The trial court was, perhaps, justified in finding that the shoes were taken with the knowledge and implied consent of defendant's counsel, but in any view of the matter, it did not, in our judgment, constitute misconduct. The modern practice, as we understand it, both in civil and criminal cases, is to send to the jury room all instruments, articles and documents, other than depositions, which have been received in evidence, and which will, in the opinion of the trial judge, aid the jury in their deliberations. 12 Ency. Pl. & Pr., 591; 2 Thompson, Trials, sec. 2575. In *Langworthy v. Connelly,*\* 14 Nebr., 340, Mr. Justice COBB, after a careful examination of numerous cases, reached the conclusion that "in the absence of statutory direction it is, in a great measure, left to the sound discretion of the court as to what papers, books or other matters of evidence, or instructions, the jury will be permitted to carry with them to their room upon retiring to consider of their verdict."

Another assignment of error is grounded upon the conceded fact that the jury were, after the submission of the

\* 45 Am. Rep., 117, 121.

case, kept together for eighty-nine hours without beds, cots or other usual facilities for obtaining sleep. They were given food, fire and reasonable opportunity for exercise, but it is insisted that their verdict was, nevertheless, the result of physical coercion. The restraint, although an exceptionally long one, was not *per se* unlawful. Sec. 485, Criminal Code. The length of time a jury shall be kept together in consultation is a matter over which the trial court has a large discretionary power. And, according to the ancient authorities, the privations which the jury in this case were compelled to endure would not tell against their verdict. It was the practice in England, even in the time of Blackstone, to keep the jury out without meat, drink, fire or light, and to compel them to follow the judge's cart to the next assize if they did not come to an agreement by the end of the term. Proffatt, Jury Trial, sec. 475; Thompson & Merriam, Juries, sec. 310; 3 Blackstone Commentaries [Hammond's ed.], 496. But this practice has been long obsolete. In every civilized country jurors are now furnished the ordinary accommodations and comforts of life, and it has, we believe, become a fixed principle of general jurisprudence that a verdict can not stand which is the result of any species of coercion. Wharton, Pl. & Pr., sec. 731; *Commonwealth v. Purchase,** 2 Pick. [Mass.], 520; *People v. Olcott*, 2 Johns. Cas. [N. Y.], *301; *People v. Goodwin,*† 18 Johns. [N. Y.], 187. The doctrine of compelling a jury to agree by the pains of hunger and fatigue was denounced by Chancellor Kent in *People v. Olcott* (p. 309) as a monstrous doctrine, and "altogether repugnant to a sense of humanity and justice." And so it was. It had its origin and vogue in rude times and among a rude people, but as manners and sentiments improved, it fell into disuse and no vestige of it now remains. There is now in substance as well as in form a trial by jury. The verdict must, as was said by Chief Justice Parker in *Commonwealth v. Purchase,* be the result of a real, and not a formal, consensus of opinion. It must

* 13 Am. Dec., 452.          † 9 Am. Dec., 203.

represent intellectual conviction, not mere lack of physical endurance. In this case, had nothing appeared but the fact that the jury had been kept together for eighty-nine hours without reasonable opportunity, to sleep, we should be very much inclined to think that the agreement was the result of coercion. But more does appear. Five jurors called by defendant to destroy the verdict gave testimony which, we think, fully sustains it. According to the testimony of these jurors—and among them were the men who voted to the last for acquittal—the agreement was a deliberate and voluntary one, and was not brought about by fatigue or exhaustion. It seems that the men who composed the jury were possessed of a large measure of pluck and endurance and that those who had been voting for acquittal stood resolutely by their opinions until convinced that they were wrong. This being so, defendant has no reason to complain.

The claim that the jury were guilty of misconduct in discussing the previous trial and conviction of defendant is not sustained by the evidence, or, to use a more conventional form of expression, the trial court was warranted in so finding from the testimony given by the five jurors who testified at the hearing upon the motion for a new trial. Where the evidence is conflicting, the finding of the trial court upon an allegation of misconduct will not be disturbed. *Hill v. State,* 42 Nebr., 503; *Carleton v. State,* 43 Nebr., 373.

Some other matters briefly discussed by counsel have received due attention, but we do not regard them as sufficiently important to justify us in further extending this opinion by giving them special consideration.

The evidence points convincingly to the defendant as the murderer of Alois F. Staudenmaier, and, there being no material error in the record, the judgment should be

AFFIRMED.

NOTE.—*Argument of Counsel—Use of Easel and Crayon.*—On the trial of Roland B. Molineux before Recorder Goff (1899-1900) for the murder of Katharine J. Adams, in the city of New York, the question

Russell v. State.

of the identity of handwriting became material. James W. Osborne, assistant prosecutor, in his opening address to the jury, tried to make use of an easel-stand and crayon. Bartow S. Weeks, counsel for prisoner, objected. The objection was sustained. This objection, being in the prisoner's favor, was not reviewed by the court of appeals. Ames, Forgery, 220; *People v. Molineux*, 168 N. Y., 264.

*Search and Seizure—Constitutional Right.*—For a full discussion, see Cooley, Constitutional Limitations [7th ed.], pp. 424-434; Works of John Adams, vol. II., pp. 523-525; Quincy's Reports [Mass.], pp. 469-482; *Paxton's Case*, Quincy's Reports, pp. 51-57; Appendix to Quincy's Reports, by Horace Gray, afterwards judge.*

*Merger of the Lesser Offense in the Greater.*—One may be convicted of either of two felonies which are so merged that, if the proper plea were interposed, he could not be convicted of both. *State v. Buzzell*, 59 N. H., 65.

The crime of being an accessory before the fact in the perpetration of a felony, merged in the crime of being a principal in the same felony. *State v. Buzzell*, 59 N. H., 65, 68.

SECTION 3 OF OUR CRIMINAL CODE was borrowed from Ohio. Indiana has substantially the same statute. But the constructions of their respective courts are widely apart. The statute and respective constructions follow. The parts of the one statute not found in the other are enclosed in brackets.

### OHIO.

*Statute Adopted in 1835.*—If any person shall purposely,† and of deliberate and premeditated malice, or in the perpetration, or attempt to perpetrate any rape, arson, robbery, or burglary, or by administering poison, or causing the same to be done, kill [another]; [every] such person shall be deemed guilty of murder in the first degree.

*Construction Given in 1857.*—Purpose to kill is an essential ingredient of murder in the first degree by administering poison. *Robbins v. State*, 8 Ohio St., 131, 190. *Dicta* in the same case make purpose to kill essential to any degree of murder.

### INDIANA.

*Statute Adopted in 1843.*—If any person [of sound memory and discretion ‡] shall purposely and of deliberate and premeditated malice, or in the perpetration,§ or attempt to perpetrate, any rape, arson, robbery, or burglary, or by administering poison, or causing the same to be done, kill [any reasonable creature in being and under

---

* See Appendix.

† This comma was inserted by Judge Swan in his compilation of 1841.—W. F. B.

‡ Words in brackets held not essential in an indictment. *Jerry v. State*, 1 Blackf., 395-396.—W. F. B.

§ Worden, J., called attention to this patent syntactical error in an opinion delivered in 1880, 70 Ind., p. 128. The legislature corrected it the following year. It has also been corrected in Ohio.—W. F. B.

the peace of this state], such person shall be deemed guilty of murder in the first degree.

*Construction 1876.*—Purpose to kill is an essential ingredient in an indictment for murder by poisoning. *Bechtelheimer v. State,* 54 Ind., 128.

*1880.*—The killing of a human being in the perpetration of a robbery, is murder in the first degree, notwithstanding the absence of purpose to kill. *Moynihan v. State,* 70 Ind., 126, 128.

In view of the fact that length of time is non-essential in the question of *deliberation and premeditation,* is not the distinction between this term and *purpose* so occult and metaphysical that it would require the assistance of telepathy to distinguish the two?—W. F. B.