[No. 24302. Department Two. April 4, 1933.]

THE STATE OF WASHINGTON, *Respondent*, v. FRANK SIMONS et al., *Appellants*, HERMAN HOOP, *Defendant*.[1]

[1]Reported in 20 P. (2d) 844.

*Frank J. Allen,* for appellants.
*George H. Freese,* for respondent.

BLAKE, J.—The defendants were jointly charged with stealing six head of cattle in Adams county. Defendant Herman Hoop pleaded guilty, and at the trial testified as a witness for the state. From judgment and sentence entered on a verdict of guilty of grand larceny, defendants Frank Simons and William Stingley appeal.

At the time the crime was committed, Hoop resided at Ellensburg, Simons resided on a ranch near Ellensburg, and Stingley was living on a ranch, owned by Simons, in the northwest part of Adams county. Hoop testified that, by prearrangement with Simons, on September 10, 1930, he went to Simons' Adams county ranch, where he found Simons and Stingley. He drove

over from Ellensburg in a truck equipped with a cattle rack, which he left at an abandoned ranch known as the "Hicks place," two or three miles westerly from the Simons ranch. From there, he walked over to the Simons place, where he spent the day. In the evening, he walked back to the Hicks place, where he waited until eight or nine o'clock, when Simons and Stingley, on horseback, drove up a bunch of cattle from the south.

Six head were loaded on Hoop's truck, and he started for Roslyn, intending to strike the Sunset highway at a point east of Vantage bridge. It had been raining, and the roads were somewhat muddy. Before he reached the highway the truck stalled at the foot of a pitch on the dirt road he was traveling, at a point near what is called "Ide's place." Ide came down to help him out, and, while they were standing there, Simons, driving a Ford truck loaded with sheep, passed without stopping.

Hoop's truck stalled again three or four miles beyond Ide's place. This time Simons, coming along in a Ford truck, helped him to get started. From there on, he proceeded to Roslyn without misadventure, stopping for gas, however, between four and five a. m. of September 11, at Mrs. Potter's service station at Vantage bridge. At Roslyn, he sold the cattle to Mike Carek, who paid him eighty dollars in cash and gave him a check for $200.05. Hoop indorsed this check and gave it to Simons.

The foregoing is not a complete summary of Hoop's testimony, but it is sufficient, taken with other evidence hereafter noticed, for consideration of the errors assigned by appellants.

Simons received the check for $200.05 and cashed it—not admitting, of course, that he knew the source of it.

Mrs. Potter testified that Hoop, with a truckload of cattle, stopped at her service station for gas between four and five in the morning of the eleventh. Furthermore, she testified that Simons, between five and six of the same morning, stopped for gas, and that he was driving a Ford truck loaded with sheep. Ide testified that he helped Hoop out the first time he was stalled, and that, while he was so engaged, a Ford truck passed them without stopping. He also testified that sometimes a month would go by without a car passing along that road. After Hoop got started, Ide watched him until he stalled the second time, when, shortly after, another car drove up by Hoop's. From the maneuvering of the lights of the second car, Ide saw it pull in front of Hoop's truck, saw the two cars move together a short distance and stop. Then they moved on separately.

A few days after the cattle were stolen, the owner, Danielson, and B. P. Herman tracked them from the pasture from which they were taken, about four miles north to the Hicks place, where they were loaded. They both testified that the cattle were driven by two horsemen. Herman testified that he recognized the hoof marks of one of the horses as those of a horse owned by Simons, and which he had seen ridden by Simons on a previous occasion. Danielson further testified that he followed the tracks of the truck to the point where they entered the Sunset highway. He also observed the tracks of the second car at both points where Hoop got stalled. Photographs of the tracks made by this car were taken at the point where Hoop was first stalled, and the photographs were admitted in evidence. Testimony was also given to the effect that the tracks on the ground and those shown by the photographs were made by a car with tires of the same kind as those on Simons' Ford truck.

Appellants present nine assignments of error.

Appellants made a motion for a directed verdict of not guilty. The foregoing narrative of the facts proven seems to us to require no comment in justification of the trial court's denial of the motion.

The court gave, in substance, an instruction which has been many times approved by this court, relative to the scrutiny and weight to be given and attached to the testimony of an accomplice. *State v. Jones,* 53 Wash. 142, 101 Pac. 708. Appellants predicate error on the giving of this instruction and the court's refusal to give a requested instruction, in substance the character of that discussed and approved in *State v. Pearson,* 37 Wash. 405, 79 Pac. 985. We think the instruction given was correct, and that the instruction requested was properly refused. There is a lack of similarity between the facts in this case and the facts of the *Pearson* case. In that case, the accomplice was a confessed perjurer and his testimony was uncorroborated. Here, the accomplice was corroborated, and there was no more discrepancy in his testimony in the various trials than could be reasonably attributed to a memory becoming less vivid by lapse of time.

Error is assigned on the refusal of the court to give an instruction relating to alibi, requested by appellants. The court did give an instruction on alibi in terms identical with an instruction repeatedly approved by this court. *State v. Pistona,* 127 Wash. 171, 219 Pac. 859. This was sufficient, and the refusal to give the requested instruction was not error.

During the cross-examination of Hoop, counsel asked him if certain specific threats had not been held over him to induce the testimony he gave. Hoop answered these questions without objection. Counsel then asked him: "As a matter of fact, if those threats

had not been made to you, some portions of your testimony would not have been made?" Objection was interposed, which the court properly sustained. If "those threats" referred to those already inquired about, the question was already answered; if counsel had in mind other threats, the question was too general.

█ Appellants further contend that the court erred in permitting the witness Herman to testify as to the identity of one of the horses that was used in driving the cattle from the Danielson pasture to the Hicks place. They contend the testimony was a conclusion or expression of opinion. We do not so view it. The testimony was to the effect that, sometime prior, Simons had ridden a horse into a field where the witness was working; that it was a larger horse than any ridden in that part of the country; that the imprints of its hoofs were larger and had individual characteristics different from other horses; and that the imprints made by one of the horses driving the cattle were made by the horse Simons had ridden into the witness' field on the occasion referred to. The testimony was a statement of fact susceptible of knowledge. Its weight was for the jury to determine. *State v. Burke*, 124 Wash. 632, 215 Pac. 31; *Russell v. State*, 66 Neb. 497, 92 N. W. 751; *State v. Fain*, 177 N. C. 120, 97 S. E. 716; *People v. Keep*, 123 Mich. 231, 81 N. W. 1097.

For similar reasons, it was not error to admit in evidence photographs of the tire tracks. The make of the tires on Simons' Ford truck was shown, and that the tread on the two front tires was the same, but different from the tread on the two rear tires, which also had the same tread. It was shown by the testimony that the marks of which the photographs

were taken were made by tires (on front and rear wheels) of the same make as on Simons' truck.

■ During the course of his argument to the jury, counsel for appellants undertook to pass a magnifying glass to the jury for the purpose of examining the photographs. The court denied him the right to do so. A rather sharp interchange of remarks over the incident passed between court and counsel. Error is assigned because of the court's refusal to permit the use of the magnifying glass. In an affidavit in support of a motion for new trial, counsel complains that the court's remarks in this connection amounted to misconduct such as to deprive appellants of a fair trial. The magnifying glass had not been offered in evidence. The court's refusal to permit its use was proper. *State v. Burke*, 124 Wash. 632, 215 Pac. 31; *State v. Everson*, 166 Wash. 534, 7 P. (2d) 603, 80 A. L. R. 106. We think that the court's remarks during the incident were called forth by counsel's own remarks. Furthermore, we do not think the remarks infringed in any way upon appellant's right of a fair trial.

■ Error is also assigned to a denial of a challenge to the jury panel. The panel was drawn under special orders, dated May 7 and May 18, 1932, respectively, for service on May 23. Appellants contend that this procedure did not comply with Rem. Rev. Stat., § 97—and it did not. But the method and manner of drawing the panel did comply with Rem. Rev. Stat., § 99, which provides:

"". . . where no jury is in regular attendance and the business of the court may require the attendance of a jury before a regular term, the judge or judges of the superior court may draw from the jury list such additional names as they may consider necessary, and

the persons whose names are so drawn shall thereupon be summoned to serve as jurors forthwith."

The judgment is affirmed.

BEALS, C. J., MAIN, STEINERT, and TOLMAN, JJ., concur.

