[No. 27503. Department Two. August 17, 1939.]

THE STATE OF WASHINGTON, *Respondent*, v. FRANK BAIRD, *Appellant.*[1]

[1]Reported in 93 P. (2d) 409.

*Robertson & Smith,* for appellant.

*John D. Evans, Ralph Wilkinson,* and *C. C. Quackenbush,* for respondent.

BLAKE, C. J.—Mark P. Miller Milling Company owns a warehouse at Seabury Siding in Whitman county. On May 19th or 20th it was discovered that the warehouse had been broken into and 136 sacks of Federation wheat had been stolen. None of the company's agents or employees had been at the warehouse for a period of eight or ten days.

On May 26th, defendant was taken into custody and subsequently charged by information with the crime of burglary in the second degree, as for breaking into the warehouse with the intent to commit larceny. By another information, he was charged with the crime of grand larceny, as for stealing and carrying away the 136 sacks of Federation wheat. The two causes were consolidated for trial before the same jury, which acquitted defendant of the burglary charge and convicted him upon the charge of grand larceny. Defendant interposed motions for new trial and in arrest of judgment, which were denied. From judgment and sentence entered upon the verdict in the grand larceny case, he appeals.

The evidence upon which the state endeavors to

sustain the verdict is wholly circumstantial. In order to apprehend the full force and effect of the state's evidence, it is necessary to keep in mind the relative location of five places: (1) Seabury Siding; (2) the town of Fairfield; (3) the town of Spangle; (4) what is known as the Duncan grade; and (5) the defendant's residence. Seabury Siding is located in the northeastern part of Whitman county, about five miles from the Spokane county line. Fairfield is located in the southeastern part of Spokane county, about eight miles from the Whitman county line. Spangle is located in south central Spokane county, about twelve miles from the Whitman county line. In relation to Seabury Siding, Spangle is situated some twenty-one or twenty-two miles to the northwest. Duncan grade is about five miles northeast of Spangle. The appellant lives three or four miles to the northwest of Spangle.

In the morning of May 18th, the appellant and one Metcalf drove into the barnyard of Howard Lindstrom, who lives three miles east of Fairfield. Standing in an open shed was a one and a half ton truck belonging to Lindstrom. It was a dual tread vehicle, equipped with four diamond tread Goodyear tires on the rear wheels. The tires on the right duals were more worn than those on the left. The truck had no muffler. Upon the truck were eight sacks of peas.

In the course of conversation with appellant, Lindstrom disclosed that his wife had been ill and that she was not at home. About noon, Lindstrom called on a neighbor, Herman Hanson, where he met the appellant and Metcalf again. During the course of conversation there, Lindstrom disclosed that he was going to attend a lodge meeting at Spokane that night.

Lindstrom left home about eight o'clock that evening. At about 8:45, a neighbor of Lindstrom's saw the latter's truck being driven away.

During the early morning hours of May 19th, a truck, apparently without a muffler, heavily loaded, was traced on a devious course between Seabury Siding and Spangle. The evidence to this effect was adduced by witnesses who lived at intervals of four to six miles along the way. None of them saw the truck. All of them were awakened by its noise and testified that it was going in a northerly or westerly direction. After daybreak, two witnesses living within a mile of the Duncan grade were awakened by a truck, apparently without a muffler, coming from the south at a high rate of speed. One testified that a smaller car followed the truck. The other testified that, about three-quarters of an hour later, he saw a car coming from the north (the Duncan grade) and going very fast toward Spangle.

During the day of May 19th, Lindstrom's truck was found near the foot of the Duncan grade. On the Duncan grade there were imprints of diamond tread dual tires. On the dirt ramp at the north end of the warehouse at Seabury Siding were found the imprints of dual diamond tread tires of such a character as to indicate that the tires on the right were more worn than those on the left. After an examination of the tires on Lindstrom's truck and of imprints made by them, a deputy sheriff testified that the imprints discovered at the warehouse were made by the tires of the Lindstrom truck.

On May 26th, forty-nine sacks of Federation wheat were found in the granary on Baird's place. Baird at that time insisted that it was Albit wheat. There was also found in the granary a sack with the initials "H. L." At the trial, Lindstrom positively identified this sack as one of the eight containing peas which were on the truck at the time it was stolen. A sack containing Federation wheat marked "Nat Harris"

was also found in Baird's granary. Nat Harris was intermittently employed to sweep out the warehouse at Seabury Siding and was permitted to take the sweepings. He had taken sacks to the warehouse and left some there. It appears that it is sometimes necessary to resack grain at the warehouse. In such instances, any empty sacks which may be found in the warehouse are used.

Appellant at appropriate times challenged the sufficiency of this evidence to sustain a verdict of guilty. We are of the opinion that the facts we have narrated were sufficient to justify the jury in concluding: That appellant stole Lindstrom's truck on the evening of May 18th; that he drove to the warehouse at Seabury Siding and stole the 136 sacks of Federation wheat which were discovered to be missing on May 19th or 20th; that he drove the loaded truck to his home northwest of Spangle, unloaded, and then drove the empty truck down the Duncan grade, where he abandoned it.

But, says appellant, the evidence with respect to the Lindstrom truck was all inadmissible, because it tended to prove a separate and distinct crime with which he was in fact charged in the superior court of Spokane county. His position is that, without the evidence relating to the theft of the Lindstrom truck, the case made by the state is insufficient to sustain a verdict of conviction for larceny of the wheat.

Conceding this position is sound, we are of the view that all the evidence relating to the larceny of the Lindstrom truck was admissible. While it is the general rule that evidence of other crimes is inadmissible in a prosecution of a criminal offense, there are several well recognized exceptions to it. One is that, when the crime charged and another crime are so interrelated as to make evidence relating to the other rele-

vant and material on the trial of the crime charged, the evidence is not to be excluded because it tends to prove a separate offense. *State v. Gottfreedson,* 24 Wash. 398, 64 Pac. 523; *State v. Dana,* 59 Wash. 30, 109 Pac. 191; *State v. Leroy,* 61 Wash. 405, 112 Pac. 635; *State v. Conroy,* 82 Wash. 417, 144 Pac. 538; *State v. Kelly,* 187 Wash. 301, 60 P. (2d) 50. In the third case cited the court said:

"The case was tried on circumstantial evidence, and the purpose of this testimony was to fix the whereabouts of the appellant about the time the Plemmons house was entered. In short, its purpose was to show that the appellant was in the vicinity and had the opportunity to commit the crime charged. The matter of the burglary, the key, the knives and the wedge, tended to identify and locate him. If the appellant left a trail of crime behind him, the misfortune is his, and that fact cannot defeat the right of the state to connect him with the crime charged by proofs of all relevant circumstances. . . . Testimony otherwise relevant does not become incompetent because it may tend incidentally to show that the accused has committed another crime."

Also, evidence is competent to show a defendant's connection with an instrumentality used in the commission of the offense charged, even though it also tends to prove that the instrumentality was stolen by defendant at some other time and place. 1 Wharton's Criminal Evidence (11th ed.), 490, § 345; *State v. O'Donnell,* 195 Wash. 471, 81 P. (2d) 509.

■ Appellant assigns as error the admission of certain evidence. As we have seen, the court permitted a deputy sheriff to testify that the tire imprints on the ramp of the warehouse were, in his opinion, made by the tires of the Lindstrom truck. That evidence of the character here challenged is competent and material is generally recognized. 5 Am. Jur. 859; 22 C. J. 597, 598; *State v. Burke,* 124 Wash. 632, 215

Pac. 31; *State v. Simmons,* 172 Wash. 438, 20 P. (2d) 844.

In giving his testimony, the deputy sheriff referred to a photograph which he had taken of the tire imprints on the ramp of the warehouse. Appellant makes some point of the fact that this photograph did not go to the jury. But appellant cannot complain, because it was upon his objection that it was not admitted in evidence.

Appellant assigns error upon the admission in evidence of certain empty sacks, sacks of wheat, sacks of pea meal, and a sample of wheat taken from his granary by the officers. We gather that the ground of objection is that they were not sufficiently identified as coming from the warehouse at Seabury Siding, or as belonging to Lindstrom, to justify their admission in evidence. They were not positively identified and consequently carried little probative value. But we think they were admissible in view of the testimony of the witnesses who testified concerning them. The same may be said of wheat samples from the lots of grain in the warehouse from which the 136 sacks were stolen.

The appellant further contends that there is such an inconsistency between the verdict of acquittal on the burglary charge and the verdict of conviction on the grand larceny charge that the latter cannot stand. We do not think this contention is sound in fact or law. Under the evidence, the larceny of the wheat does not necessarily presuppose a breaking into the warehouse by appellant. No agent or employee of the owner had been at the warehouse for eight or ten days prior to May 19th. The jury might, under the circumstances, have considered that the breaking was done by someone other than appellant; that he had made an unobstructed entry. In law, there is no in-

consistency in verdicts of acquittal and conviction upon charges of crimes composed of different elements, but arising out of the same state of facts. *McDaniel v. Commonwealth,* 165 Va. 709, 181 S. E. 534; *People v. Haupt,* 247 N. Y. 369, 160 N. E. 643; *State v. Brundige,* 114 Kan. 849, 220 Pac. 1039; *United States v. Capone,* 93 F. (2d) 840; *Freeman v. United States,* 96 F. (2d) 13; *People v. Cordish,* 110 Cal. App. 486, 294 Pac. 456.

Under the foregoing authorities, there was, in law, no inconsistency in the verdicts.

Judgment affirmed.

BEALS, MAIN, SIMPSON, and JEFFERS, JJ., concur.

