[File No. Cr. 229]

STATE OF NORTH DAKOTA, Respondent, v. EMERY GRABER and Thomas Johnson, Appellants.

(44 NW2d 798).

Opinion filed November 27, 1950

*Benson & Swanson*, for appellants.

*Wallace E. Warner,* Attorney General and *Ralph B. Maxwell,* State's Attorney, for respondent.

GRIMSON, J. The defendants were convicted of the crime of aggravated assault and they moved for a new trial which motion was denied. They appeal from the judgment of conviction and from the order denying the motion for a new trial.

On the appeal from the judgment the defendants urge the same grounds assigned as error on the motion for a new trial. Such are:

1. That the verdict is clearly against the evidence.
2. That the verdict is contrary to law.
3. That there was misconduct on the part of the jurors.
4. That there was newly discovered evidence very material to the defense which the defendants could not with reasonable diligence have discovered and produced at the trial.

As specifications of error under the first two grounds defendants allege that "The overwhelming evidence in the case shows that the state's complaining witness, Milo Hochstetler, was the aggressor at all times and that he hit the defendant, Emery Graber, first with the hammer." 2. "That if it had not been for the state's complaining witness, Milo Hochstetler, wherein he testified that the defendant Graber was cut on the head by a rear view mirror in the center of the cab of the truck there would have been no conviction. This testimony was absolutely false." In connection with this specification defendants argue assignment No. 4 to the effect that newly discovered evidence shows that there "never had been a rear view mirror in said truck."

No errors of law either in the admission of evidence or in the instructions of the court are specified.

A motion for a new trial on the grounds of the insufficiency of the evidence is addressed to the sound, judicial, discretion of the trial court. The burden is on the movant of pointing out to the trial court wherein the evidence is insufficient to sustain the verdict. The appellate court will not interfere with the decision of the trial court unless an abuse of discretion is shown. State v. Shepard, 68 ND 143, 277 NW 315; State v. Cray, 31 ND 67, 153 NW 425; State v. Stepp, 48 ND 566, 185 NW 812;

State v. Weber, 49 ND 325, 191 NW 610; State v. Vogt, 57 ND 335, 221 NW 887; State v. Strong, 52 ND 197, 201 NW 858; Kavanaugh v. Nestler, 45 ND 376, 177 NW 647, 3 Am Jur 164, Sec 157, p 140, Sec 131, p 145, Sec 137.

On November 11, 1948, the complaining witness, Milo Hochstetler, was driving a 1937, Model D, 1½ ton International truck south on an improved county highway in Rolette County, near the City of Rolette. He met a caravan of three vehicles coming north on that highway. The first was a tractor driven by the defendant, Emery Graber, the second was a truck driven by one Bennie Beaver, the last one was another tractor driven by defendant, Thomas Johnson. The defendant, Graber, stopped his tractor, waved to the complaining witness who then stopped by the side of but a little past the tractor. Graber walked towards him, opened the cab door and said he wanted to talk to him. There is a direct conflict in the testimony as to what happened then..

The complaining witness, Hochstetler, testified that Graber reached in, turned off the ignition of his truck and took the keys, that "he pulled his gloves off, took his jacket off and threw it down, grabbed ahold of me and tried to pull me out of the truck." Hochstetler claims that when he resisted Graber hit him "along side of the face" with his fists; that Graber struck him again; that he lay down on the seat drawing his arm up and that Graber then struck him on the mouth; that he tried to get away from him further but that Graber got up on the fender over the wheel and kept striking him; that there was a hammer on the floor boards which he claims Graber grabbed and waved over him; that he guarded with his arm and got hold of the handle of the hammer; that Graber then called the defendant, Thomas Johnson, to take the hammer; that Johnson opened the door on the west side of the truck and took the hammer; that Johnson grabbed Hochstetler by the right arm and pulled him and Emery out of the truck, head first; that they rolled into the ditch and that when they got up Johnson held him by the arm while Graber struck him, knocking him down.

Graber's version of the beginning of this altercation is that he opened the left cab door of the truck and tried to talk to Hoch-

stetler to get a settlement of what he claimed Hochstetler owed him; that Hochstetler claimed he owed nothing; Graber testified: "He (Hochstetler) had a hammer. The hammer went over the top of my arm. If I had not thrown my arm up as quick as I did I believe he would have killed me." "Q.—Make any other contact of your body except the arm? A.—On the head. Q.— What was the nature of the blow on the head? A.—Cut me open and I bled quit a bit. Q.—What did you do then? A.— I gave him a whipping." He claims Hochstetler tried to hit him with the hammer until he got Johnson to go around the truck and take it away from them; that they then both rolled into the ditch but got up and a standup fight then ensued.

Bennie Beaver drove the truck behind Graber's tractor and stopped about a block and a half away. He testifies that he saw Graber go to the truck, open the door and "the first thing I knew they had started, they had started scrapping in the cab." "Q.—Did you see a hammer in play any time while they were scrapping? A.—I did not see nothing of a hammer. Q.—Why did you leave the scene? A.—Well, it was none of my business."

The defendant, Thomas Johnson, was driving the tractor behind Beaver. He stopped and walked towards the Hochstetler truck. "Q.—When you got there to the Hochstetler truck what did you observe? A.—The first I seen was when Milo swung the hammer and hit him. Q.—Did Milo hit Emery with a hammer? A.—Yes he did. Q.—Where did he hit him? A.—In the head. . . . Q.—What happened then? A.—There was a fight on. Q.—Between whom? A.—Between Emery and Milo. Q.— Where was that? A.—In the truck. Emery went right in after him."

Johnson described the fray as follows: "They were down on the cushion, Emery on top of course. He finally got ahold of his arm and held right arm with hammer and he says, 'Thomas, get that hammer.' Q.—What did you do then? A.—Walked around the truck, opened the door and took ahold of this hammer and pulled and said, 'Milo let go of the hammer.' Don't remember what he said but he let go. Q.—You took the hammer? A.—Took the hammer and put it in the back end of the truck."

This is testimony of the parties who either participated in or

saw the altercation. In addition the jury had before it surrounding circumstances such as the appearance of the snow at the site of the fight described by the sheriff. There was testimony to the effect that three or four days before the fight Emery Graber was heard to have threatened the complaining witness in connection with a civil suit between Hochstetler and Levi Graber, defendant's father, and that a day or two before the fight defendant, Thomas Johnson, had also been heard to make a remark that he would like to fight Hochstetler. Then there was the testimony of the police magistrate of Rolette that immediately after the fight the defendant, Graber, approached him inquiring how much it would cost to "kick the guts out of a man."

The jury is the judge of the credibility of the witnesses. This is not determined by the number of witnesses to a fact but by the faith and credit given each witness as determined from the whole evidence. When the jury has rendered its verdict the function of the appellate court on appeal from a motion denying a new trial is merely to ascertain whether there is substantial evidence to sustain the verdict of the jury. This court can not pass on the credibility of the witnesses. The trial court who heard and saw the witnesses in an exhaustive memorandum analyzed the testimony and came to the conclusion that "there was ample evidence before the jury to justify the verdict they returned." The decision of the trial court on the motion for a new trial on the grounds of the insufficiency of the evidence will not be reversed unless the record shows an abuse of discretion. State v. Shepard, supra. Klasen v. Kinnischtyke, 55 ND 839, 215 NW 552; Pengilly v. J. I. Case Threshing Machine Co., 11 ND 249, 91 NW 63; Haslam v. Babcock, 72 ND 581, 10 NW2d 239 and cases cited.

After a careful study of the evidence this court is satisfied there was ample evidence to support the verdict and that the trial court did not abuse his discretion in denying defendant's motion for a new trial on account of the insufficiency of the evidence.

Defendants contend further that any force used by them was applied only in justifiable self defense. They cite Sec. 12–2603 NDRC 1943 that the use of force or violence upon another person

is not unlawful when, "committed either by the party about to be injured or by any other person in his aid or defense, in preventing or attempting to prevent an offense against his person . . . if the force or violence used is not more than sufficient to prevent such offense." Defendants claim that the force used by Graber upon Hochstetler and the aid rendered by Johnson was necessary to prevent Hochstetler from inflicting serious injury on Graber with the hammer. This defense was submitted to the jury and no exception was filed to the court's instruction thereon. Defendants argue that it is not necessary that there be actual danger to justify self defense, if, from Graber's standpoint it reasonably appeared to him that he was in great danger at the time and if the defendants acted in good faith. That undoubtedly is the law but whether the evidence sustained that contention was a matter for the jury.

The evidence showed that after defendant Johnson had taken the hammer away from both the contestants they fell out upon the ground and rolled into the ditch. Johnson's testimony then is: "Q.—What happened after you threw the hammer in the back of the truck? A.—When I took that they both came out of the truck head first. Q.—Down on the ground? A.—Yes. Q.— Into the ditch? A.—Yes. Q.—Then— . A.—They both got up just as quick, both were fighting at once. Q.—Then what happened? A.—The battle was on. Q.—Fighting? A.—Yes. Q.— Hitting one another? A.—You bet they were. Q.—Was Emery the only one striking blows? A.—He was the only one that connected, Milo tried." Emery Graber testified that Hochstetler was never down until he said he had enough. "Q.—Did you quit after he said he had enough? A.—Yes. Q.—Had you hit him pretty hard around the face and head? A.—I imagine I did. Q.—That was what you intended to do after he hit you with the hammer, was it not? A.—Yes."

Sec. 12–2610 NDRC 1943, under which the defendants were tried defines aggravated assault and battery as follows: "Every person who, without justifiable or excusable cause and with intent to do great bodily harm, wilfully and unlawfully commits any assault and battery upon the person of another and thereby

inflicts any grievous bodily harm upon such other person, is guilty of the crime of aggravated assault and battery. . . ."

The testimony shows that the complaining witness was immediately after the altercation taken to the hospital where he remained for nine days under treatment for serious injuries sustained by him on his head and face. He claims some degree of permanent injury to his jaw and eyesight.

Under the law of self defense the jury had a right to consider whether the force and violence used were not more than sufficient to prevent the threatened injury. "Acts cannot be regarded as having been done in self defense where the force is employed after the necessity therefor has ceased to exist." 6 CJS 945; State v. Miller, 85 WVa 326, 102 SE 303. "A person defending himself from an attack becomes liable as an aggressor where the force employed is in excess of that which the law will tolerate in a given case for defensive purposes, and for the use of such excessive force he is liable both civilly and criminally." 4 Am Jur 153, Sec 51; Fraguglia v. Sala, 17 Cal App2d 738, 62 P2d 783; Wendler v. State, 128 Fla 618, 175 So 255.

There is evidence from which the jury could have concluded that the defendant, Graber, used more force than was reasonably necessary to prevent any danger of injury to himself.

The defendants' third assignment of error is to the effect that there was misconduct on the part of the jurors. The first specification is that they received evidence out of court. In amplification thereof defendants allege that the place to which the jurors retired for deliberation was not a proper place; that it was the Rolla Public Library room which contained books, periodicals, magazines, papers and writing equipment such as is usually found in a public library. There is no showing that any of them were law books; there is no showing made that any of the books and papers in the library in any way contained anything bearing on the case; there is no showing that they were used or even touched by the jury. It is further claimed that this jury room was located upstairs in the city hall directly above the street where at the time a celebration was in progress and that the noise and announcements therefrom disturbed the jury. There is no

showing that any evidence bearing on the case reached the jury from the street.

The presumption is that the jury performed its duties in accordance with the law and was not influenced by any outside evidence. There is no showing made in the instant case to overcome that presumption.

A second specification of misconduct of a juror is alleged. In an affidavit by juror Heins, it is claimed that juror, Albrecht, during the deliberation of the jury made a statement derogatory of the father of defendant, Graber, which the juror, Heins, says he believed had an effect on the jury prejudicial to the defendants and from which he inferred that juror Albrecht had preconceived notions of guilt on the part of the defendants. Heins does not claim to have been influenced by such statement. He states merely his opinion that said statement had a prejudicial effect. The presumption is that the jury performed its duty in a proper manner. The burden is on the defendants to show that they were prejudiced. 23 CJS 1295, Criminal Law, Sec 1480.

Subsection 4, Sec. 29–2402 NDRC 1943, makes it a ground for a new trial in criminal cases that "the verdict has been decided by lot or by any means other than a fair expression of opinion on the part of all the jurors." There is no showing that the verdict was decided by any such means, nor that any attention was paid to the remark of juror Albrecht. No prejudice is shown.

In the case of Ayrhart v. Wilhelmy, 135 Iowa 290, 112 NW 782, the court held that "A casual remark derogatory to a party made by a juror during the deliberations of the jury, does not require a new trial, in the absence of a showing that anyone gave heed to or is influenced by it." See also State v. Robidou, 20 ND 518, 128 NW 1124; State v. Cray, supra.

Furthermore, the only provision in our law for the use of an affidavit of a juror to impeach a verdict is in Subsection 2, Sec. 28–1902 NDRC 1943, where the affidavit of a juror may be used in civil cases to impeach a verdict that has been arrived at by chance. Whether that provision would be extended to criminal cases decided by lot has not been passed upon by this court.

Otherwise, the principle has long been laid down by this court that a verdict cannot be impeached by the affidavit of a juror. State v. Forrester, 14 ND 335, 103 NW 625; State v. Albertson, supra; Johnson v. Seel, 26 ND 299, 144 NW 237; Mikkelson v. Snider, 43 ND 416, 175 NW 220; Cohn v. Wyngarden, 48 ND 344, 184 NW 575.

In the case of State v. Lindeman, 64 ND 518, 254 NW 276, 93 ALR 1442, this court says:

"In the case of People v. Knapp, 42 Mich 267, 3 NW 927, 36 Am Rep 438, Judge Cooley said: 'It is against public policy to allow the deliberation of a petit jury to be reported.' . . . The only proper and just course is to insist upon a rigorous observation of the proper practice, in order to prevent all occasion for injurious suspicions.' Statements or affidavits by jurors in support of the verdict in reporting the deliberation of the jury as much as their statements made to impeach the verdict and a report of any of their deliberations for or against the verdict is forbidden by sound public policy. The rule announced by Judge Cooley, namely: 'The only proper and just course is to insist upon a rigorous observation of the proper practice, in order to prevent all occasion for injurious suspicions' is a safe rule and its observation is not difficult."

The defendants assign as a fourth ground for a new trial the discovery of new evidence which they claim would have refuted the testimony of the complaining witness, Hochstetler, as set forth in his second specification of error, wherein he testified that the defendant, Emery Graber, was cut on the head by striking a rear view mirror in the front of the cab of the truck during the affray.

The doctor who examined Graber after the fight found a "clean cut" scalp wound about 3/4ths. of an inch long above his forehead. Graber claims that was caused by a blow from the hammer in the hands of Hochstetler. Hochstetler claims that during the altercation Graber hit his head against the rear view mirror causing the wound. The testimony showed that a rear view mirror was found by the sheriff after the fight on the floor boards of the truck in which the affray occurred.

The attack on this testimony of the state is based on the alleged discovery after the trial that that particular model of truck was assembled without an inside rear view mirror and that an examination of the truck shows that none had been attached. This is supported by the affidavit of three disinterested and reliable men who say they examined the inside of the cab of the truck, and especially the center post of the windshield and found no mirror nor indications that a rear view mirror had ever been attached there, and by the affidavit of Abraham Graber, a prior owner, to the effect that there never was any such mirror in the truck while he owned it. This is controverted by the state by affidavits of the present owner of the truck stating that when he bought it there had been such a rear view mirror attached to the panel above the windshield, and by an employee of another former owner to the same effect. The state files an affidavit of the sheriff to the effect that he found a rear view mirror on the floor of the cab on his examination of the truck after the fight and that a bracket contrivance to hold the mirror was then attached to the frame of the windshield. He is supported by an affidavit of the deputy sheriff. With the sheriff's affidavit are filed pictures of the inside of the windshield and its frame supporting his affidavit and showing two holes on the right hand panel frame just above the windshield. In rebuttal defendants filed an affidavit that those holes were not where the mirror was supposed to have been attached and where it reasonably would have been attached if for the use of the driver of the truck. Other affidavits were filed impeaching the testimony of other witnesses. We have carefully scrutinized the affidavits of the defendants and come to the conclusion that they are purely for the purpose of impeaching the testimony of the state's witnesses and some of them on issues that are not material. State v. Albertson, 20 ND 512, 128 NW 1122; Libby v. Barry, 15 ND 286, 107 NW 972; State v. Young, 55 ND 194, 212 NW 857. Furthermore, that considering the rebuttal affidavits of the state there is very little likelihood that the result would be changed by this alleged newly discovered evidence. A new trial will not be granted upon the

ground of newly discovered evidence unless the evidence so discovered is of such a character as will probably change the result. Heyrock v. McKenzie, 8 ND 601, 80 NW 762; Braithwaite v. Aiken, 2 ND 57, 49 NW 419; Pengilly v. J. I. Case Threshing Machine Co., supra, 23 CJS 1253, Criminal Law, Sec. 1461; McGhee v. State, — Tenn —, 189 SW2d 826, 164 ALR 617.

Whether or not a new trial shall be granted on the grounds of newly discovered evidence is largely within the discretion of the trial court. Aylmer v. Adams, 30 ND 514, 153 NW 419; State v. Stepp, supra; State v. Zimmerman, 60 ND 256, 233 NW 845, 79 ALR 816, and cases cited. After the analysis of the affidavits pro and con filed in this matter of newly discovered evidence the trial court in its memorandum·states that in his opinion a new trial could not be expected to produce any results different from that of the trial had. This court has come to the same conclusion. .

The judgment of the District Court is affirmed.

NUESSLE, C. J., CHRISTIANSON, MORRIS and BURKE, JJ., concur.