The STATE of North Dakota, Plaintiff and Respondent,

v.

Joseph E. JAGER and James Forrest Stewart, Defendants and Appellants (two cases).

Cr. 263, 274.

Supreme Court of North Dakota.

July 26, 1957.

Rehearing Denied Oct. 14, 1957.

E. J. McIlraith, Minot, and Duffy & Haugland, Devils Lake, for defendants-appellants.

Ralph J. Erickstad, State's Atty. of Ramsey County, Devils Lake, and Philip R Bange, Sp. Asst. State's Atty. of Ramsey County, Grand Forks, for plaintiff-respondent.

BURKE, Judge.

The defendants were convicted of the crime of grand larceny in the District Court of Ramsey County. Judgment was pronounced against both defendants on February 26, 1954. On the same day the defendants filed a motion for a new trial and a notice of appeal from the judgment. The motion for a new trial came on for hearing on March 20, 1954, and it was denied by written order on April 26, 1954. No appeal was ever taken from this order.

The order settling the statement of the case upon the appeal from the judgment was made upon October 16, 1954. The defendants delayed in prosecuting this appeal because of their discovery that the law enforcement officers of Ramsey County had submitted certain items of physical property to the Federal Bureau of Investigation for examination; that a report upon such examination had been returned to the officers, but that the contents of the report had not been disclosed to the defendants nor made known to the court or jury.

After considerable controversy the defendants secured an order of the district court directing the State's Attorney of Ramsey County to furnish them with a copy of this report. Upon the basis of this report defendants made a second motion for a new trial on December 26, 1955, upon the ground of newly discovered evidence. This motion was denied on February 6, 1956. The defendants have appealed from the order denying this motion. There are thus two appeals before us: that from the judgment of conviction and that from the order denying the second motion for a new trial.

Upon the appeal from the judgment it is urged: first, that the trial court erred in refusing to grant the defendants' motion for a change of venue; second, that the court erred in overruling a demurrer to the information; and third, that the trial court erred in its rulings on the admission of certain evidence upon the trial of the case.

The motion for change of venue was made upon the ground that the defendants could not have a fair and impartial trial in Ramsey County because of the bias and prejudice of the residents of such county. Numerous affidavits were filed in support of this motion and at least an equal number against it. It was shown that newspapers published at the county seat of Ramsey County published an account in which it was stated that at the time of their arrest the defendants had firearms and bur-

glars' tools in their possession. Approximately ten months had elapsed between the time of the publication of these articles and the trial. Other references to defendants' several motions for continuances in published newspaper articles were also called to the attention of the court. The trial court denied the motion.

■ A motion for a change of venue, because of bias or prejudice alleged to exist in a county is addressed to the judicial discretion of the trial judge. State v. Pusch, 77 N.D. 860, 46 N.W.2d 508. The trial judge in the exercise of this discretion determined that there was not prejudice or bias against the defendants of the extent or degree that would prevent them from having a fair trial in Ramsey County. He was present in the county and certainly in a much better position to weigh the merits of the conflicting affidavits filed by the parties than we are.

■ Insofar as the newspaper reports are concerned, they were merely factual accounts of what took place. They contain neither inflammatory language nor any expressed opinions as to the guilt or innocence of the defendants. In addition, the publication of the principal article was so remote from the time of trial, that it would be improbable that any jurors selected to try the case would remember its details. Subsequent newspaper references to motions for continuances were completely innocuous. In view of all the circumstances we are agreed that there was no abuse of the trial court's discretion in the denial of this motion.

Defendants' demurrer to the information was grounded upon their contention that it charged two separate and distinct crimes, namely: the larceny of money from one person and the larceny of a safe from another person.

The information charged that the defendants:

"did wilfully, unlawfully and feloniously, with fraud and stealth, take, steal and carry away personal property then and there exceeding the value of Twenty Dollars, consisting of lawful money of the United States of America and a safe, the said personal property being then and there in the possession of Lawrence Engelhart, the said money in the sum of Eight Hundred Eighty and no/100 Dollars, then and there owned by and the property of Barbara Meyer and the said safe then and there owned by and the property of Lawrence Engelhart and not the property of said defendants. * * *"

The evidence offered by the state tended to establish that Lawrence Engelhart owned a safe which he kept in his home; that he had placed in the safe a cash box containing $880 which was the property of his aunt, Barbara Meyer, and that this safe and its contents were stolen.

■ The question, therefore, is whether the larceny of a single receptacle which contains the property of more than one individual may be charged as a single crime. Upon this question we have no doubt whatever. It is a well-established principle that an information may charge the theft of articles, belonging to two or more persons, at the same time and place as a single crime. 52 C.J.S. Larceny § 54, pages 844, 845; State v. Sampson, 157 Iowa 257, 138 N.W. 473, 42 L.R.A.,N.S., 967; State v. Mjelde, 29 Mont. 490, 75 P. 87; State v. Clark, 46 Or. 140, 80 P. 101; Clemm v. State, 154 Ala. 12, 45 So. 212, 129 Am.St.Rep. 17; Annotation: 42 L.R.A.,N.S., 968. In fact where, as in this case, there is the taking of a single receptacle containing the property of two or more persons such a taking will not support a charge of more than one crime. 52 C.J.S. Larceny § 53, p. 844.

It follows that the demurrer to the information, upon the ground asserted, was properly overruled.

■■ Next it is urged that it was error for the court to admit in evidence Exhibits 52, 55, 56, 57 and 58. Exhibit 52 is a photograph of an automobile tire track. The other exhibits are photographs of the tread pattern of the tires of the automobile in the defendants' possession at the time of

their arrest. As a foundation for the introduction of the photograph of the tire track the state established that the parties who stole the safe came to the Engelhart premises in a gray Ford; that they parked it next to a hedge at a spot where the Engelhart property adjoins the alley at the rear; that a clear impression of a tire was left in the soil at the place where this car was parked; that Exhibit 52 was a photograph of that impression or track and was an accurate and fair representation of the tire print. As a foundation for Exhibits 55 to 58 it was established that these photographs were accurate representations of the tread pattern of the four tires which were on the gray Ford which was in defendants' possession at the time of their arrest. The objection urged to these exhibits was that they were incompetent for the reason that the jury was not capable of making a positive identification of the vehicle used in the theft by a comparison of the photographs. This of course is true. All that the photographs show is that the car parked in the alley had one tire which had the same tread pattern as all four tires on the defendants' car and it was for this purpose only that the exhibits were introduced. The fact established was a circumstance which was consistent with defendants' guilt but one which, standing alone, would have little probative value. However it was proper to receive this evidence together with that of a multitude of other circumstances which were also consistent with the defendants' guilt, because a sufficient number of such circumstances will permit a reasonable conclusion that in their aggregate they were not just a series of unfortunate coincidences. As to the admissibility of photographs of the tracks see State v. Simons, 172 Wash. 438, 20 P.2d 844; Sullivan v. State, 217 Ind. 259, 27 N.E. 2d 760; Photographic Evidence, Scott, Sec. 693.

■ It is also urged that it was error for the trial court to refuse to admit in evidence a transcript of a recording of a conversation between Mr. Engelhart and a Mr. Ferreo. Mrs. Stewart, wife of the defendant, James Stewart, testified that she had heard this recording over and over again; that she made a transcript of it in longhand and compared the transcript with the recording by reading her transcript while she listened to the recording. At the trial, she testified as to her recollection of the recording. She was then handed the transcript, defendants' Exhibit H. At this time defendants' attorney stated to her,

"You may now use defendants' Exhibit H for the purpose of refreshing your memory to determine whether or not you have missed any important part of that conversation."

After reading the exhibit the witness replied:

"I think I got all of the general idea". She was then asked, "There isn't anything you wish to add?" and she replied, "No, it is more or less the same thing all through it."

At the time this exhibit was first offered in evidence the trial judge stated:

"* * * she should be permitted to testify as to what was on that tape by refreshing her memory by that transcription. It seems to me she is entitled to refresh her recollection and tell what she got off that tape, but I believe I must agree with Mr. Bangs that that should not go to the jury."

Mr. McIlraith, one of the attorneys for the defendants then stated: "We agree with that too." Mr. Duffy, the other attorney for the defendants, stated, "That is right".

It appears therefore that the trial judge and the attorneys for both the state and the defendants agreed that Exhibit H should be used in precisely the manner in which it was used. The defendants are therefore in no position to claim that it was error for the trial court to refuse to receive Exhibit H in evidence.

■ The second motion for a new trial was made upon the ground of newly discovered evidence. The motion was founded

upon a report of the Federal Bureau of Investigation which was given to the Sheriff of Ramsey County. After the apprehension of the defendants, the sheriff sent a collection of specimens to the Federal Bureau of Investigation for comparison and analysis. His object was to ascertain if it could be positively determined by microscopic and chemical examination: 1, whether the soil which was taken from defendants' car was the same as that in Engelhart's back yard; 2, whether certain tools found in defendants' car had been used to open the stolen safe; 3, whether certain footprints found in Engelhart's back yard had been made by shoes which the defendant Jager wore at the time of his arrest; 4, whether the handwriting upon a highway map found in the possession of the defendants was that of the defendant Stewart, and 5, whether a small spring found in defendants' possession had been a part of the lock of the stolen safe.

The report was to the effect that the soil taken from the defendants' car was not the same as that found in Engelhart's back yard; that it could not be determined by examination whether the tools found in defendants' possession had been used to open the stolen safe; that the footprints forwarded had not been made by the shoes worn by the defendant Jager at the time of his arrest; that from the specimens furnished it could not be determined whether the handwriting on the map found in defendants' possession was the handwriting of the defendant Stewart and that the small spring found in defendants' possession had not been a part of the lock of the stolen safe.

The defendants assert that they had no knowledge of the existence of this report at the time of the trial and claim that, though it is largely negative in character, it must be given the effect of positive proof and is thus newly discovered evidence of the defendants' innocence. They say that since the soil found on the fenders of defendants' car was not the same as that in Engelhart's yard, it is proof that the car

was never at or in the yard. Of course, if the defendants' car had been used in the theft, it had been driven over paved and dirt roads more than 100 miles between the time of the theft and the time the soil sample was taken from the fenders and it would have been a most unusual coincidence if any of the soil from Engelhart's yard still adhered to the fenders at that time. It would also be most unusual if tools used to pry open a safe had left marks so that they could be positively identified as the tools used and the fact that they left no such marks is not proof that they were not used. The fact that the selected footprints had not been made by the shoes worn by the defendant Jager is not proof that Jager had not been in Engelhart's yard. The fact that it could not be determined, from the specimen furnished, whether the handwriting on the map was that of Stewart does not establish that the writing on the map was not that of Stewart. Indeed the fallacy of giving affirmative effect to evidence which is purely negative is well illustrated by the fact that Stewart, at the trial, admitted the handwriting on the map was his. The finding that the small spring found in defendants' car had never been a part of the stolen safe is of no importance whatever.

■ A motion for a new trial on the ground of newly discovered evidence is addressed to the trial court's judicial discretion and the trial court's decision upon such a motion will not be set aside unless an abuse of discretion is shown. State v. Braathen, 77 N.D. 309, 43 N.W.2d 202; State v. Hazer, 57 N.D. 900, 225 N.W. 319; State v. Kerns, 50 N.D. 927, 198 N. W. 698; State v. Thompson, 68 N.D. 98, 277 N.W. 1.

Here the trial court found that the so called newly discovered evidence was not of sufficient weight to warrant the granting of a new trial.

■ In our opinion the evidence of the state overwhelmingly supports the conviction of the defendants. We think also that parts of the defendants' testimony are clear-

ly unworthy of belief. This is particularly true of the defendant Stewart's testimony that the Chief of Police of Grand Forks County, the day after he was arrested, forced him to write on a road map the names of certain persons who lived in the vicinity of Knox, N. D., which is about 140 miles west of Grand Forks. Even if we should give no weight whatever to the chief's contradiction of this testimony, it is apparent that he could not have known on the day after the commission of the crime, that subsequent investigation would produce a witness who would testify that these names had been written on the road map by Stewart in her presence. The witness positively identified Stewart as a person who had spoken to her in the vicinity of Knox about noon on the day of the theft. This identification is corroborated by Stewart's possession, at the time of his arrest, of the road map upon which were written names of persons which she gave him in answer to his inquiries. The defense in this case was an alibi. The defendants testified that they had never been out of Grand Forks on the day the crime was committed. In view of the evidence we do not believe that another jury could reach a conclusion other than that the claimed alibi was false. The record in this case is about 800 pages long. To review it in detail would unnecessarily lengthen this opinion. We agree with the trial court that the report of the Federal Bureau of Investigation which the defendants designate as newly discovered evidence, is not evidence that has any probative value and if it were admitted in evidence at a new trial, it would not in any probability have the effect of producing a verdict other than guilty. It is thus clear that the trial court did not abuse its discretion in denying a new trial. State v. Thompson, supra.

Since no error was shown upon the appeal from the judgment and it appears that the trial court's order denying a new trial was not an abuse of judicial discretion, both the judgment and the order are affirmed.

GRIMSON., C. J., and JOHNSON, SATHRE and MORRIS, JJ., concur.