STATE of North Dakota, Plaintiff
and Respondent,

v.

Wayne Douglas DePRIEST, Defendant
and Appellant.

Crim. No. 430.

Supreme Court of North Dakota.

April 12, 1973.

Kent A. Higgins, Public Defender, and Benjamin C. Pulkrabek, Asst. Public Defender, Bismarck, for defendant and appellant.

Helgi Johanneson, Atty. Gen., and Thomas F. Kelsch, State's Atty., Bismarck, for plaintiff and respondent.

TEIGEN, Judge.

The defendant has appealed from a judgment of conviction for the crime of burglary on a jury verdict of guilty, and from an order denying a motion for a new trial.

There are five claims of error. The first three of these, which can be considered together, are as follows:

"1. The Burleigh County State Attorney's Office erred in not furnishing the defendant with a copy of the F.B.I. report regarding this particular case until the day before trial.

"2. The Court erred in not allowing the defendant a postponement in the trial.

"3. The Court erred in not allowing the defendant out of state witnesses responsible for the F.B.I. report regarding this particular case."

The FBI report referred to consists of a laboratory analysis of sample particles of broken glass, putty, paint, sweeping compound and sawdust taken by the police from inside a large building used as the office, retail area and workshop of a lumberyard where the burglary took place, and the defendant's clothing. The FBI report states that there were no particles found on the defendant's clothing that would match up with any of the samples taken from the building. The defendant's counsel received a copy of this report the day before the opening of the trial but had been aware for approximately six or seven weeks prior to the trial that there was no evidence in the report linking the defendant to the offense.

The defendant contends that it was a denial of due process for the state's attorney not to furnish him with a copy of the report until the day before the trial because it was exculpatory evidence which could have been of material importance to the defense. In support of this contention the defendant cites the following language from a concurring opinion in Giles v. State of Maryland, 386 U.S. 66, 100, 87 S.Ct. 793, 810, 17 L.Ed.2d 737 (1967):

"A criminal trial is not a game in which the State's function is to outwit and entrap its quarry. The State's pursuit is justice, not a victim. If it has in its exclusive possession specific, concrete evidence which is not merely cumulative or embellishing and which may exonerate the defendant or be of material importance to the defense—regardless of whether it relates to testimony which the State has caused to be given at the trial —the State is obliged to bring it to the attention of the court and the defense."

The pertinent phrase from the above language for our purpose is that the evidence must be that "which may exonerate the defendant or be of material importance to the defense." The defendant contends that the FBI laboratory report is exculpatory because the laboratory analysis, which failed to match up any of the samples with particles on the defendant's clothing, supports the defendant's claim that he did not enter the building. Before the commencement of the trial, in a chambers proceeding, the defendant moved for a postponement of the trial and for permission to subpoena the FBI experts who made the analysis and prepared the report, as out-of-state witnesses, for the purpose of laying a foundation for the admission of the report in evidence and to establish the exculpatory nature of the report. Counsel for the defendant argued that the report clearly tends to establish the innocence of the defendant and that these expert witnesses were therefore material to the presentation of the defendant's case. The State resisted the motion and argued that the report was immaterial and irrelevant in this case, that the report was inconclusive because the inability of the experts to make a positive identification does not tend to establish that the defendant was not in the building, and therefore it has no probative value and does not constitute negative evidence. The trial court denied the motion and the case proceeded to trial.

■ In a criminal prosecution the State and the defendant each shall have the right to a speedy trial. Section 29–19–02, N.D. C.C. However, "the court, upon a showing of sufficient cause therefor by either party, may direct the trial of a cause to be

postponed to another day in the same term or to the next term." Section 29–19–03, N.D.C.C. The granting or refusing of an application for a postponement of a criminal trial is a matter within the sound discretion of the trial court. Bandy v. United States, 296 F.2d 882 (8th Cir. 1961), cert. denied, 369 U.S. 831, 82 S.Ct. 849, 7 L.Ed. 2d 796 (1962); Wallace v. United States, 174 F.2d 112 (8th Cir. 1949), cert. denied, 337 U.S. 947, 69 S.Ct. 1505, 93 L.Ed. 1749 (1949), rehearing denied, 338 U.S. 842, 70 S.Ct. 30, 94 L.Ed. 515 (1949); State v. Phillips, 18 S.D. 1, 98 N.W. 171 (1904); State v. Sonnenschein, 37 S.D. 139, 156 N. W. 906 (1916).

▮ Although the application for continuance was not made in writing as required by Section 29–19–08, N.D.C.C., the record reveals that the State did not object to its form and acquiesced in what was being attempted.

"Acquiescence in error takes away the right of objecting to it." Section 31–11–05(7), N.D.C.C.; State v. Braathen, 77 N.D. 309, 43 N.W.2d 202 (1950).

▮ The trial court was given the opportunity to pass on the question again as its refusal was specified as error in a motion for new trial following conviction. The motion was denied. A motion for new trial is also addressed to the trial court's judicial discretion and its decision will not be set aside unless an abuse of discretion is shown. State v. Jager, 85 N.W. 2d 240 (N.D.1957); State v. Braathen, supra; State v. Thompson, 68 N.D. 98, 277 N.W. 1 (1938); State v. Hazer, 57 N.D. 900, 225 N.W. 319 (1929); State v. Kerns, 50 N.D. 927, 198 N.W. 698 (1924).

The question of whether a report of this nature constitutes exculpatory evidence was before this court in State v. Jager, supra. In that case the defendants were unaware of the existence of an FBI report at the time of the trial and moved for a new trial on the ground of newly discovered evidence of their innocence. The report in

Jager reached the same conclusion as did the report in the present case. The FBI was unable to match up any of the specimens sent in for comparison and analysis. This court stated that it was a fallacy to give affirmative effect to purely negative evidence and upheld the decision of the trial court in denying the motion as being within the court's judicial discretion, to be set aside only upon a showing of an abuse of that discretion. State v. Jager, supra, 85 N.W.2d at 245.

It appears in this case that counsel for the defendant had information that there was no evidence in the report to link the defendant with the offense some six or seven weeks prior to the commencement of trial and that the Criminal Information was filed and a copy thereof delivered to counsel for the defendant on the 16th day of March, 1972, the day of arraignment, but that the trial of the action did not commence until May 16, 1972. There were endorsed upon the Criminal Information the names of all the witnesses whom the State intended to call. This is in accordance with statutory requirement. Section 29–11–57, N.D.C.C. The names endorsed on the Information were those of the local police officers, who conducted the investigation and made the arrest, and the owner of the burglarized building. In denying the motion for a new trial the trial court made the above observation and concluded that counsel for the defendant had knowledge of the contents of the FBI report and also had knowledge of the fact that the State did not intend to introduce the report in evidence or to call as witnesses the experts who had performed the analysis. Counsel for the defendant requested the State to stipulate that the FBI report be admitted in evidence. The request was denied. Thereafter, by agreement of counsel and the court, the police officer who gathered the sample particles from the building testified thereto, and also testified that he forwarded the particles, along with the defendant's clothing, to the FBI laboratory in Washington, D. C., for analysis. Further,

it was agreed that counsel for defendant, in his argument to the jury, would be permitted to comment that the State failed to offer in evidence the report obtained as a result of the analysis. On argument to this court it was admitted by both parties that counsel for the defendant, in his argument to the jury, had pointed out the failure of the State to introduce the report, stating his conclusions as to the reason therefor. We do not pass on the propriety of this arrangement. The question before us is whether the trial court abused its discretion in denying the defendant's motion for a continuance, in denying the defendant out-of-state subpoenas for the persons responsible for preparing the FBI report, and in denying the defendant's motion for a new trial.

■ We have reviewed the entire record and have concluded that the trial court did not abuse its discretion. The State had objected to the continuance and also to the introduction of the FBI report into the record on the ground that the report was immaterial, irrelevant, inconclusive and had no probative value. With this we agree. The fact that the laboratory analysis disclosed that none of the sample particles taken from the building were the same as particles found upon the defendant's clothing does not establish that the defendant was not in the building. This report is not negative evidence. We find that it was not an abuse of discretion to deny the defendant's motion for a postponement of the trial and the privilege to subpoena out-of-state witnesses because the testimony which these witnesses could have offered was immaterial, irrelevant, not conclusive and of no probative force, and also for the further reason that the motion came too late to show reasonable diligence. Bandy v. United States, *supra*.

The next claim of error is as follows:

"4. The Court erred in allowing into evidence, over the defendant's objection, a map showing the path the police officers believed the defendant used to enter Quality Builder's lot and building, when there was no testimony to support the police officers' belief."

The map consisted of a drawing locating the buildings, lumber sheds and the fenced enclosure of the lumberyard. Prior to the trial court's receiving the map in evidence the officer who prepared it testified, without objection from the defendant, relative to the footprints in the snow which he had marked on the map. At no time, however, did he testify that the footprints were those of the defendant. He did testify to the existence of other footprints and marked on the map the general area where they were located during cross-examination. The map, even though not drawn to scale, can be helpful to the jury in understanding the testimony of the witness. Its admission is addressed to the discretion of the trial court.

■ Regardless of the timeliness of defendant's objection to the introduction of the map in evidence, we conclude that its admission in evidence by the trial court was not an abuse of its discretion. The map was a reproduction of the scene as the officer found it.

"Maps and diagrams are commonly used to illustrate testimony relating to the scene of the crime. * * *

"The admission of maps, diagrams, and sketches rests within the discretion of the trial judge, and his action will not be reversed in the absence of an abuse of discretion." Wharton's Criminal Evidence, 12th Ed., Vol. 2, § 685.

The final claim of error is that "the facts are not sufficient to substantiate the verdict." A review of the record shows the following undisputed facts.

At 2 a. m. on February 3, 1972, an internal alarm system installed in Quality Builders' office sounded at the Bismarck Police Department. The officer in charge at the police department reset the alarm and immediately ordered several radio patrol cars to the scene. Two radio patrol

cars were in the immediate vicinity of Quality Builders when the order was given. One was one block away and the other two blocks away from Quality Builders. These two patrol cars converged upon the area within seconds. In addition, two other radio patrol cars arrived at Quality Builders within minutes of the sounding of the first alarm. The police officers operating these patrol cars took positions at various places around the building. While they were on guard a second alarm was sounded at police headquarters indicating that there was still someone in the office building of Quality Builders. The police officers had seen no one come over the fence and into the lumberyard enclosure nor had they seen anyone leave. Just a few seconds after the officers had positioned themselves the defendant came out of the shadow on the north side of the building at a location where it was later discovered a doorway was open. It appears that this door can be opened only from inside the building. Upon seeing the defendant one of the officers ordered him to halt, whereupon he began to run across the yard in an easterly direction. When he reached the east end of the building where another officer was stationed, this officer shouted to the defendant to halt, whereupon the defendant either fell down or stopped. He was immediately apprehended. It was discovered that he was wearing dark gloves, a dark coat and a dark ski mask which covered all of his features except his eyes, nose and mouth. He had no identification on his person but he carried a flashlight.

An investigation of the building disclosed that there were several windows broken on the north side. The officers immediately conducted a search of the building and found no one in the building nor did they see anyone else leave the lumberyard enclosure. The defendant's automobile was found parked immediately north of Quality Builders' lumberyard.

The defendant testified at the trial. He testified that his automobile had stopped at the point where it was found and that he had left it and had started walking to a service station to obtain help. He first started in one direction and then decided to go in the other direction to another service station and decided that it would be shorter to cut across Quality Builders' lot. He testified that he climbed over the fence and started walking across Quality Builders' lot and, while so doing, passed the building which had been entered. He testified that he saw one of the windows in the building had been broken and decided that he would look into the building through the broken window. Following this, he testified, he continued to walk through Quality Builders' lot and as he was walking someone shouted at him. He then panicked and started to run. Next he heard someone yell, "Stop or I will shoot", at which time he stopped and a number of policemen appeared and took him into custody.

The fence surrounding Quality Builders' lumberyard is of the woven type and, according to the estimates of the officers, varies in height at different points from four to seven feet; that the only means of gaining entry is either by crawling under the fence or a gate or by climbing over the top thereof.

The crime of burglary with which the defendant was charged is defined in Section 12–35–02(9), N.D.C.C., as follows:

"Any person who:

\*　　\*　　\*　　\*　　\*　　\*

"9. Breaks into and enters at any time any building or any part of a building, booth, tent, railroad car, motor vehicle or trailer, vessel, or other structure or erection in which any property is kept, with intent to steal or to commit a felony,

is guilty of burglary and shall be punished by imprisonment in the penitentiary for not less than one year nor more than ten years."

The defendant argues that although four police officers testified that they saw him

on Quality Builders' lot none of them testified that they saw him within the building which was burglarized, nor did they find any property on the defendant's person that had been taken from inside the burglarized building. He therefore argues that the circumstantial evidence is not sufficient to prove beyond a reasonable doubt the crime of burglary and that, therefore, the trial court erred in denying defendant's motion for a new trial. We do not agree.

A motion for a new trial on the ground of insufficiency of the evidence is addressed to the trial court's sound discretion. State v. Anderson, 172 N.W.2d 597 (N.D.1969); State v. Smith, 153 N.W.2d 691 (N.D.1967); State v. Loyland, 149 N. W.2d 713 (N.D.1967); State v. Little Bear, 130 N.W.2d 83 (N.D.1964).

In passing upon a motion for a new trial based on the insufficiency of the evidence the trial court is clothed with a wide discretion and its determination in respect to such insufficiency will not be disturbed on appeal unless there has been an abuse of the discretion. State v. Anderson, *supra*; State v. Smith, *supra*; State v. Loyland, *supra*; State v. Little Bear, *supra*.

The burden is on the movant to point out to the trial court wherein the evidence is insufficient and unless it is shown that the evidence is insufficient to sustain the verdict this court will not interfere with the decision of the trial court. State v. Anderson, *supra*; State v. Smith, *supra*; State v. Graber, 77 N.D. 645, 44 N.W.2d 798 (1950).

It is not an abuse of discretion on the part of the trial court to deny a motion for a new trial on the ground of insufficiency of the evidence where there is substantial evidence to support the verdict. State v. Anderson, *supra*; State v. Smith, *supra*; State v. Jager, 91 N.W.2d 337 (N.D.1958); State v. Ramstad, 87 N.W.2d 736 (N.D. 1958).

It is true that there was no direct evidence that the defendant was seen within the building. On this question, of course, the evidence was circumstantial. The law does not require that every fact going to make up a case be proved by eyewitnesses or by direct evidence. In criminal as well as civil cases issues may, generally speaking, be established by circumstantial evidence and circumstantial evidence alone may justify a conviction, providing it is of such probative force as to enable the trier of the fact to say that the defendant is guilty beyond a reasonable doubt. State v. Ankney, 195 N.W.2d 547 (N.D.1972); State v. Emmil, 172 N.W.2d 589 (N.D. 1969).

Under the circumstances of this case, as we have reviewed the evidence above, we find the trial court did not abuse its discretion in denying the motion for a new trial and that the evidence is sufficient to support the verdict.

The judgment of conviction and order denying the motion for a new trial are affirmed.

STRUTZ, C. J., and ERICKSTAD, PAULSON and KNUDSON, JJ., concur.