STATE of North Dakota, Plaintiff and Appellee,

v.

Vernon Ray OLMSTEAD, Defendant and Appellant.

Crim. No. 610.

Supreme Court of North Dakota.

Jan. 11, 1978.

PEDERSON, Justice.

This is an appeal from an order denying a motion for new trial in a case that we are now considering for the third time. Vernon Ray Olmstead was convicted of having committed, on June 28, 1975, "rape in the first degree," in violation of § 12–30–01(1) and (4) and § 12–30–04(2), NDCC.[1] Olmstead had waived a jury and, after a four-day trial, he was found guilty by the District Court of Grand Forks County and sentenced to five years in the state penitentiary.

Olmstead was represented by Attorney Evan F. Heustis at the trial. Shortly after the trial, John H. Moosbrugger, who had been engaged by Olmstead's parents, became Olmstead's counsel. Moosbrugger moved, pursuant to Rule 33, NDRCrimP, for a new trial (the contents of which motion will be described hereinafter), and then moved to withdraw that motion. Attorney David Kessler, who had been engaged by Olmstead's wife, appeared at the hearing on the motion to withdraw the motion for new trial, and resisted that motion in behalf of Mrs. Olmstead. Moosbrugger's motion to withdraw the motion for new trial was granted.

Olmstead asked that he be "evaluated" at the state mental hospital and this was ordered as a part of the presentence investigation under Rule 32(c)(2), NDRCrimP.

Olmstead then dismissed Moosbrugger and appointed Kessler to represent him. Kessler moved to reinstate the motion for new trial and for release pending appeal. Both motions were denied. Kessler prepared Olmstead's appeal "from the Judgment of conviction against him of the offense of first degree rape and the sentence imposed thereon . . . [and] from the Order denying Defendant's application to reinstate Motion for new trial . . . ." This Court heard Olmstead's motion for release pending appeal and a divided court denied

Wheeler, Wolf, Wefald & Peterson, Bismarck, for defendant and appellant, and David Kessler, Grand Forks, of counsel; argued by Robert O. Wefald, Bismarck.

Thomas B. Jelliff, State's Atty., Grand Forks, for plaintiff and appellee.

1. Repealed by § 41, Ch. 116, S.L.1973, effective July 1, 1975. Sex offenses have been redefined in Ch. 12.1–20, NDCC.

the motion [*State v. Olmstead,* 242 N.W.2d 644 (N.D.1976)]. Next we heard arguments on Olmstead's appeal from the conviction and sentencing, and from the order denying reinstatement of the motion for new trial. A unanimous court affirmed the conviction, but reinstated the motion for new trial and remanded for consideration by the trial court of the original motion for new trial, subject to the stipulations made by Attorney Moosbrugger and the state's attorney [*State v. Olmstead,* 246 N.W.2d 888 (N.D. 1976)].

The reinstated motion sought a new trial in the interest of justice, specifying the following reasons:

(1) Olmstead proposes to take a polygraph test and agrees that the results thereof be admitted, and that the examiner shall be examined and cross-examined at the hearing on the motion;

(2) Olmstead desires to testify in his own behalf;

(3) Additional alibi witnesses are now available;

(4) Olmstead desires a mental evaluation at the state mental hospital;

(5) There is information available concerning the instability of the complaining witness which should be brought to the attention of the court;

(6) The State has within its control physical evidence which tends to clear the defendant, which the court has not seen;

(7) The evidence presented at the trial was insufficient to sustain a judgment of conviction.

At the beginning of the hearing on this motion for new trial, Olmstead declined the court's offer to permit amendment thereof. During the hearing the following evidence was taken regarding each of the reasons set forth in the motion:

(1) The State presented testimony, which the court admitted over defendant's strong objection, concerning the polygraph test.

(2) Olmstead testified in his own behalf, denied committing the offense and, as at the trial, presented an alibi as his principal defense.

(3) Additional alibi witnesses were called and testified in support of Olmstead's alibi that he could not have committed the offense because he was elsewhere during the entire period when the crime was being committed.

(4) The results of the state mental hospital evaluation were introduced.

(5) No information was offered relating to the alleged instability of the complaining witness.

(6) No information was offered relating to any physical evidence under the control of the State which would tend to clear Olmstead.

(7) Argument was made that the evidence was insufficient to sustain the conviction.

During Olmstead's testimony, he gratuitously stated: "The whole basis of me getting a new trial was a lie detector test, that was the whole basis." Needless to say, the polygraph test results indicated deception when Olmstead denied committing the offense. Counsel called two experts who testified concerning the unreliability of the polygraph results, especially with regard to persons who have certain brain disfunctions such as those suffered by Olmstead. This testimony is contradicted, in part, by the state hospital evaluation which was received without objection.

The trial court heard extensive arguments by counsel for Olmstead and for the State, made a comprehensive statement of its analysis of the issues before it, and concluded with:

". . . the only logical and reasonable conclusion to be made after hearing the evidence in the motion for new trial is that the proof of the defendant's guilt beyond a reasonable doubt which was established at the trial from approximately November 11 to November 14, 1975, has now been established beyond all doubt."

The motion for new trial was denied, Olmstead appealed from that denial, and we affirm.

Olmstead has again changed counsel and, on this appeal, is represented by Robert O. Wefald, who argues the following issues:

I. Whether the religious bias of the trial judge denied the defendant-appellant the constitutional rights guaranteed him under the First and Fourteenth Amendments to the Constitution of the United States and Section 4 of the Constitution of the State of North Dakota.

II. Whether it was proper to consider testimony from a polygraph examination in spite of a claim of the lawyer-client privilege.

III. Whether in light of all the evidence it was proper for the trial court to deny the motion for new trial.

Although the appeal before us now is only from the order denying a new trial and no issue of bias or constitutional rights was raised by the motion for new trial, we conclude that there was an alternative motion for relief under the Uniform Post-Conviction Procedure Act (Chapter 29–32, NDCC), and we have said that this Act permits any attack, direct or collateral, upon a judgment, which might otherwise have been available under any common law, statute or other writ, motion, petition, proceeding or remedy. *State v. Carmody*, 243 N.W.2d 348 (N.D.1976). Accordingly, we will consider all issues raised, directly or collaterally, even though they may have no relationship to the denial of the motion for new trial. We do not mean to abandon what we said in *State v. Haakenson*, 213 N.W.2d 394, 398 (N.D.1973):

"Appeals from orders denying motions for new trial will ordinarily be appropriate only where the order itself is a final determination of the action, as where a motion for new trial on the ground of newly discovered evidence is denied after the time for appeal from the judgment has passed."

See, also, Explanatory Notes following Rule 33, NDRCrimP. See, also, *State v. Erickson*, 231 N.W.2d 758, 761 (N.D.1975).

## RIGHT TO IMPARTIAL, UNBIASED TRIER OF FACT

In announcing its verdict, the trial court, apparently using standard jury instructions as a guide, addressed the defendant on matters concerning the applicable law, the burden of the State, reasonable doubt, the weighing of evidence, circumstantial evidence, credibility of witnesses, and other matters which the trial court described as the basic rules which apply to criminal cases. From these observations, reported in eight pages of the transcript, Olmstead quotes, out of context, the following:

"The Court is of this opinion that this evidence can be reconciled in part. It can be reconciled by accepting the testimony of the defendant's wife and corroborating witnesses as to the defendant being at the coffee house on the night of June 27, 1975. It cannot be reconciled as to the time factor. It's the Court's opinion that testimony as to going out to the carnival to witness for the Lord after 12:15 a.m. is incredible and defies common sense beyond good judgment."

At one point in the statement, before making the above comment, the trial court had stated:

"An instruction which certainly has great importance in this case relates to weight and credibility of testimony given by witnesses.

"The jury or the Judge in this case is the judge of all questions of fact. The jury or the Judge alone must weigh the evidence under these instructions and determine the credibility of those who have testified. And in performing this task the jury or the Judge may consider those facts and circumstances in the case which tend to strengthen, weaken or contradict one's testimony. The jury or the Judge may consider the age, intelligence and experience of the witness, the strength or weakness of his recollection, how he came to know the facts to which he testified, his possible interest in the outcome of the trial, any bias or prejudice he may have, his manner and appearance, and whether he was frank or evasive while testifying,

and whether his testimony is reasonable or unreasonable.

"If it's found that there is a conflict in the evidence, the Judge or the jury should reconcile it, if it's possible, because each witness is presumed to have told the truth. If this cannot be done, the jury or the Judge has the right to determine whom of the witnesses he will believe in whole or in part. And I believe this should be emphasized, that the jury or the Judge should give credible testimony its just and fair weight and should consider the evidence in the case in the light of his common sense and ordinary experience and observation of human affairs. If the Jury or the Judge concludes that a witness has knowingly testified falsely concerning any material matter, he has the right to distrust such witness's testimony in other particulars and may reject all the testimony of that witness and give it such weight and credibility as he thinks it deserves.

"The test is not which side produces the greater number of witnesses or presents the greater quantity of evidence, but rather which testimony and what evidence convinces the jury or the Judge as being more accurate and otherwise trustworthy."

The court then discussed specific items of testimony, such as that of the complainant, evaluating its consistency and credibility, and pointed out some inconsistencies. In commenting on the testimony of alibi witnesses for the defense, the court likewise pointed out consistencies and inconsistencies and, immediately before making the observation which Olmstead finds objectionable, said:

"The Court, if there is a conflict in the evidence, which is obvious, it must be reconciled if possible because each witness is presumed to have told the truth. If it cannot be reconciled, the Judge has the right to determine whom he will believe in whole or in part."

Immediately after the remarks which Olmstead says prove religious bias, the trial court said:

"Carrying that a step further if there was any witnessing done for the Lord out at the carnival setting that evening, the only reconciliation that is reasonable is that such time for the defendant and his wife to return to their apartment. The defendant's wife testified he left the apartment and the witness Sissy Williams, I believe, testified that he came to her apartment and knocked on the door about 1:30 that morning of June 28th and that he stayed there a half an hour and the Court asked her specifically what was the urgency of his visit. She said to tell her to pray for some homosexual and for someone who was deadly ill from cancer and this witness Williams had met this woman only very briefly on one occasion.

"It appears to the Court that this was an attempt on the part of the defendant to establish an alibi and to account for his time."

Olmstead argues that a fair reading of the remarks of the trial court indicates that the sole basis for discounting the defense testimony was the court's unwillingness "to accept the religious practices of these witnesses." Counsel for Olmstead acknowledged, during oral argument before this Court, that the court could have validly said, "the testimony is not credible," but he argues that, in effect, the trial judge said, "I don't believe that it is good religious practice to witness for the Lord at a carnival between 12:30 and 1:00 o'clock in the morning." We do not read the comment in that manner. If alibi testimony which involves a religious activity must be believed, few convictions could occur—it would be everyone's alibi.

■ We readily acknowledge· that trial before an unbiased judge is essential to due process [*Johnson v. Mississippi*, 403 U.S. 212, 91 S.Ct. 1778, 29 L.Ed.2d 423 (1971)], and that this means that courts should avoid even an appearance of bias [*Peters v. Kiff*, 407 U.S. 493, 92 S.Ct. 2163, 33 L.Ed.2d 83 (1972)]. See, also, Canons 1, 2 and 3, Code of Judicial Conduct, and *State v. Weippert*, 237 N.W.2d 1 (N.D.1975).

Section 4 of the Constitution of North Dakota provides:

"The free exercise and enjoyment of religious profession and worship, without discrimination or preference, shall be forever guaranteed in this state, and no person shall be rendered incompetent to be a witness or juror on account of his opinion on matters of religious belief; but the liberty of conscience hereby secured shall not be so construed as to excuse acts of licentiousness, or justify practices inconsistent with the peace or safety of this state."

Article I of the Amendments to the United States Constitution provides:

"Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."

Article XIV of the Amendments to the United States Constitution prohibits states from doing those things which Article I prohibits Congress from doing.

■ An alibi is a recognized, valid defense in this State. *State v. Lyon*, 59 N.D. 374, 230 N.W. 1 (1930); *State v. Gates*, 51 N.D. 695, 200 N.W. 778 (1924); *State v. Nelson*, 17 N.D. 13, 114 N.W. 478 (1908). See, also, Rule 12.1, NDRCrimP.

■ In 75 Am.Jur.2d Trial, § 733, it is stated:

"In general, the defense of alibi is not one requiring that the evidence given in support of it be scrutinized otherwise or differently from that given in support of any other issue in the case, . . ."

Olmstead presents the novel argument that because his alibi placed him away from the scene of the crime, "witnessing for the Lord," the trial court's comment of disbelief of the testimony displays religious bias.

When considering all of the comments by the trial court, including the remark, "It's the Court's opinion that testimony as to going out to the carnival to witness for the Lord after 12:15 a.m. is incredible and de-

fies common sense beyond good judgment," we conclude that no religious bias was displayed. The descriptive phrase "as to going out to the carnival to witness for the Lord after 12:15 a.m." identifies which *testimony* the court found to be incredible and which defied common sense beyond good judgment. It does not explain "why" it was deemed incredible. It may have been the demeanor of those who testified, or the inconsistencies, or the unusual total recall of certain events and exact times of occurrences from a remote and insignificant time in the past. We do not attribute a bad motive to a remark by an experienced, capable trial judge, made at the conclusion of a difficult trial during which he displayed complete fairness. The statement was, at most, undiplomatic. See *State v. Weippert*, 237 N.W.2d 1 (N.D.1975).

"The purpose of reviewing a judgment in a criminal action is not to determine whether the record is perfect, but to determine whether the defendant has had a fair trial under the law and whether his conviction is based upon evidence establishing his guilt beyond a reasonable doubt." *State v. Marmon*, 154 N.W.2d 55, 64 (N.D.1967).

See, also, *State v. Allen*, 237 N.W.2d 154, 162 (N.D.1975); *State v. Iverson*, 187 N.W.2d 1, 44 (N.D.1971); *Michigan v. Tucker*, 417 U.S. 433, 446, 94 S.Ct. 2357, 41 L.Ed.2d 182 (1974).

No violation of Section 4 of the North Dakota Constitution or Articles I and XIV of the Amendments to the United States Constitution has been shown. Cases (primarily from Michigan [2]) cited by Olmstead, or discovered by this Court, involving the questioning of witnesses about their religion, have no bearing upon the issue before us.

## POLYGRAPH EXAMINATION

In the only case in this State where "lie detector" evidence was offered to prove guilt or innocence, this Court held that the evidence was inadmissible. *State v. Pusch*, 77 N.D. 860, 46 N.W.2d 508 (1951). Later,

2. E. g., *People v. Hall*, 391 Mich. 175, 215 N.W.2d 166, 76 A.L.R.3d 523 (1974).

in *State v. Swanson*, 225 N.W.2d 283, 285 (N.D.1975), where the trial court had rejected defendant's attempt to introduce evidence of his willingness to take a polygraph test, we said:

"This court may be required to re-examine its decision in *State v. Pusch, supra*, if presented with an appropriate record. Such a record is not present in this case."

The instant case likewise fails to present us with an appropriate record upon which this Court can base a re-examination of the question—nor is this a case in which the decision in *Pusch* can be applied. Here, Olmstead's counsel and the prosecutor had stipulated (as we pointed out in *State v. Olmstead*, 246 N.W.2d at 891, *supra*) that, for the purpose of the motion for new trial, Olmstead would submit to a polygraph test and the results would be admissible, and that the polygraph operator would be examined and cross-examined. Olmstead, himself, never indicated that his counsel was not following his instructions in entering that stipulation and, while testifying at the hearing on his motion for new trial, confirmed that "the whole basis of me getting a new trial was a lie detector test." Additionally, Olmstead, himself, introduced the results of a previous, separate polygraph examination (which also indicated deception when he denied committing the rape). We assume that the stipulation is not disputed and should be enforced by the court when no good cause is shown to the contrary. The fact that the results were unfavorable rather than favorable is not a good cause.

"The stipulation is in the nature of a contract and a party may not be relieved therefrom without first making application to the court and upon a showing of good cause." *Bjerken v. Ames Sand and Gravel Company*, 206 N.W.2d 884, 888 (N.D.1973).

See, also, *Lawrence v. Lawrence*, 217 N.W.2d 792 (N.D.1974).

Whether relief from a stipulation will be granted rests in the sound discretion of the trial court. *Northern Pac. Ry. Co. v. Barlow*, 20 N.D. 197, 126 N.W. 233 (1910).

No abuse of discretion is indicated here. Rule 502, NDREv, does not prohibit waiver of the lawyer-client privilege. His own statement at the motion hearing denies merit to Olmstead's argument that there was "no knowing waiver." We also agree with the majority in *People v. Barbara*, 400 Mich. 352, 255 N.W.2d 171 (1977), when they said that the question of whether polygraph may be used to assist a judge in determining whether to grant a motion for new trial is a different matter than the question of admissibility at a trial to show guilt or innocence.

## MOTION FOR NEW TRIAL

Rule 33, NDRCrimP, superseded all of Chapter 29–24, NDCC, including § 29–24–02 which itemized the exclusive grounds upon which new trials in criminal cases could be granted. Now the ground for new trial is "in the interest of justice." It is necessary, however, to "point out with particularity the defects and errors complained of." One of the grounds for new trial under § 29–24–02 was: "When the verdict is contrary to law or clearly against the evidence." Even though insufficient evidence to sustain the conviction more readily justifies a motion for judgment of acquittal under Rule 29, NDRCrimP, Olmstead exercised his prerogative to point it out as a defect or error under Rule 33. See *State v. Holy Bull*, 238 N.W.2d 52 (N.D.1975).

The question of sufficiency of evidence to sustain the conviction was squarely before this Court and was decided in *State v. Olmstead*, 246 N.W.2d 888, *supra*. We said that there was competent and substantial evidence (although controverted) sufficient to support Olmstead's conviction. Matters testified to at the hearing on the motion for new trial could in no way diminish the evidence presented at the trial. Some testimony serves to reassert a defense which failed at trial. Other testimony elicited at the motion hearing is at least as devastating to Olmstead's cause as any of the trial evidence. Accordingly, we reaffirm our determination that the evidence does sustain the conviction.

As we stated in *Holy Bull, supra,* 238 N.W.2d at 55:

"A motion for new trial is also addressed to the trial court's judicial discretion and its decision will not be set aside unless an abuse of discretion is shown."

See, also, *State v. DePriest*, 206 N.W.2d 859 (N.D.1973); *State v. Carroll*, 123 N.W.2d 659 (N.D.1963); *State v. Braathen*, 77 N.D. 309, 43 N.W.2d 202 (1950); *State v. Hummel*, 73 N.D. 308, 14 N.W.2d 368 (1944).

■ We have examined the record and find no abuse of discretion. It is not an abuse of discretion on the part of the trial court to deny a motion for a new trial on the ground of insufficiency of the evidence where there is substantial evidence to support the decision. *State v. DePriest*, 206 N.W.2d at 865, *supra*.

The order denying the motion for new trial is affirmed. Olmstead has not shown his entitlement to any relief under the Uniform Post-Conviction Procedure Act (Ch. 29–32, NDCC).

PAULSON, VOGEL and SAND, JJ., and BENNY A. GRAFF, District Judge, concur.

The Honorable RALPH J. ERICKSTAD, deeming himself disqualified did not participate; the Honorable BENNY A. GRAFF, Judge of the Fourth Judicial District Sitting in his place.